Nevin Bus Lines, Inc., et al., Appellants, *v.*
Public Service Commission et al.

Argued October 23, 1935.

Before KELLER, P. J., BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*M. Norman Fralin,* for appellants.

*Samuel Graff Miller,* with him *Harry H. Frank, John C. Kelley* and *Richard J. Beamish,* for appellee.

OPINION BY PARKER, J., December 18, 1935:

The Pennsylvania Railroad Company filed a complaint with the Public Service Commission alleging that Nevin Bus Lines, Inc., was operating motor ve-

hicles as a common carrier for the transportation of intrastate passengers without a certificate of public convenience as required by the Public Service Company Law. A stipulation having been entered into as to the facts, a cease and desist order was issued by the commission and an appeal was taken to this court. The order and because the stipulation contained contradic- remitted for further hearing after an opinion (99 Pa. Superior Ct. 370) by Judge LINN, now Mr. Justice LINN of the Supreme Court, on the ground that the agreed statement of facts was not sufficient to support the order and because the stipulation contained contradictions. Further hearings were then held before the commission and, in the meantime, the respondent made an arrangement with certain of its corporate affiliates, Nevin Atlantic Lines and Nevin Transit, Inc., whereby certain operations were taken over by these companies. Such companies were made parties respondents by agreement, and it is not necessary to distinguish between the operations of the respective allied companies.

The commission again found that appellant was engaged in intrastate commerce in carrying passengers (1) between Pittsburgh and Philadelphia, each as points of origin and destination, routed through Emmitsburg, Maryland, and (2) between various points in Pennsylvania without leaving this state, and then made this final order: "It Is Further Ordered: That Nevin Bus Lines, Inc., Nevin-Atlantic Lines, and Nevin Transit, Inc., their agents and employes, forthwith severally cease and desist from transporting passengers as common carriers between points in Pennsylvania."

The appellants, by their assignments of error complain of the findings of fact and the "cease and desist order." Two distinct situations are raised by the proofs and require separate treatment, to wit, those operations between points in the state where the route traversed is partly out of the state and those where the

operations are all within the state. They will be considered in the same order.

I. The sixth assignment of error is as follows: "The Commission finds that this combination of elements constitutes a subterfuge and that the respondent in transporting passengers between Philadelphia and Pittsburgh and intermediate points via Emmitsburg, Maryland, has been and is engaged in intrastate transportation in violation of the Public Service Company Law."

It is not disputed that the respondents have been operating from New York through Philadelphia to Pittsburgh and thence westwardly to Chicago and other midwestern cities. As we said in the former appeal (p. 372): "Appellant is undoubtedly engaged in interstate commerce, and for such business, does not require a certificate of public convenience......Whether interstate service is necessary, proper, or convenient is not a matter to be determined by the state." The immediate question here involved on this branch of the controversy is whether there is sufficient evidence to support the finding of the commission that the routing of this traffic between Philadelphia and Pittsburgh through Emmitsburg, Maryland, was a mere subterfuge to avoid the regulation of what was, in fact, intrastate transportation. The essential facts in the case are not disputed, although the credibility of the witnesses was for the commission as the fact-finding body.

We will enumerate the facts on which the commission depends for support of its order. The respondents operated on schedule a regular passenger bus route from New York to Philadelphia, thence via the Lincoln Highway to Gettysburg where it left that highway and passed to the south through Emmitsburg, Maryland, and Waynesboro, Greencastle, and Mercersburg, Pennsylvania, to McConnellsburg, where it again joined the Lincoln Highway, thence by that thoroughfare to Pitts-

burgh and on west to Chicago and other cities in the middle west. Passengers were sold tickets and transported by this route from points of origin in Pennsylvania east of Emmitsburg to points of destination in Pennsylvania west thereof, and vice versa. The route traveled by the busses of appellant between Philadelphia and Pittsburgh through Emmitsburg is 303 miles in length, while the route by the Lincoln Highway through Gettysburg, Chambersburg, and McConnellsburg is only 293 miles, and the distance traversed in Maryland is less than ten miles. The territory between Emmitsburg and Gettysburg is a place where lines passing east and west and north and south naturally meet, and it is to the interest of motor bus companies and for the convenience of the public to have a point of interchange or junction for passenger routes in that vicinity. Gettysburg is preferable to Emmitsburg from the standpoint of efficient motor transportation, and there is more traffic available at Gettysburg than at Emmitsburg. The facilities by way of hotels, restaurants, and garages are better at Gettysburg than at Emmitsburg, the former being the larger town. It is the contention of the complainants that the natural route for the transportation of passengers from Philadelphia to Pittsburgh is over the Lincoln Highway through Lancaster, Gettysburg, Chambersburg, and McConnellsburg, while the respondents diverge from that route at Gettysburg by a more southerly route through Maryland for a short distance, which detour is ten miles farther than the direct route.

While there is evidence which warrants the finding of these primary facts relied upon by the commission, there is other uncontradicted evidence shown by the testimony of witnesses for the complainants or admissions which must be considered before an inference can be drawn that the directing of the route through Maryland was a mere subterfuge to avoid intrastate regula-

tion. At the time these complaints were filed, the route between Philadelphia and Pittsburgh via Emmitsburg, Maryland, on account of the condition of the different highways, was a route used not only by these respondents but by other passenger bus operators who were at the time accommodating the same districts and traffic, and the commission had issued a certificate of public convenience to a rival operator for that portion of this route through Emmitsburg which was within the state of Pennsylvania, thereby indicating that such a route was proper and necessary for the accommodation of the public. At the same time, a number of operators were operating over the route now objected to and using Emmitsburg as a junction or focal point between routes passing east and west and those running north toward Harrisburg and south to Baltimore, Washington, and southern cities. The respondents had established a route which was clearly interstate from Pittsburgh over the Lincoln Highway to McConnellsburg, thence by Emmitsburg to Baltimore and Washington, so that Emmitsburg became the natural junction point of east and west and north and south routes. Respondents carried a large number of passengers from points in Pennsylvania whose destination was Emmitsburg or points south thereof. In laying out such interstate route, connections were made and facilities were established which made it inconvenient for the respondents to change their junction to another point. Persons living on this route were entitled to means of transportation the same as other citizens, and the respondents were justified in arranging their route so as to secure such traffic. The principal complaint on the score we are considering is as to traffic having its origin in Pittsburgh or Philadelphia with the respective cities as points of destination, but it appears from the evidence of the respondents that this did not constitute more than four or five per cent of the traffic handled by them.

Taking these clearly established facts into consideration, we are all of the opinion that the evidence offered by the complainants was not sufficient to support a. finding by the commission that the detour from the Lincoln Highway via Emmitsburg was a mere subterfuge to avoid regulation by the commission, as we shall endeavor to show.

The bona fide transportation of passengers from a point in one state to a point in another state is interstate transportation, and transportation between two points in the same state by a normal route which is partly in another state is still interstate transportation. In the leading case of Hanley v. Kansas City S. R. Co., 187 U. S. 617, 23 S. Ct. Rep. 214, it was held that the railroad commission of Arkansas could not, without violating the commerce clause of the federal constitution, enforce rates for the continuous transportation of goods between two points within the state of Arkansas where a large part of the route was outside the state. Also, see Western Union Tel. Co. v. Speight, 254 U. S. 17, 41 S. Ct. Rep. 11; Missouri P. R. Co. v. Stroud, 267 U. S. 404, 45 S. Ct. Rep. 243. To constitute interstate commerce by a bus line, it is not sufficient that its busses cross a state line, but they must transport passengers or goods interstate, or intend in good faith to do so. A bus line engaged in intrastate transportation does not escape regulation by the state authorities by carrying an occasional interstate passenger: Inter-City Coach Co. v. Atwood, 21 Fed. (2d) 83. Also, see Interstate Busses Corp. v. Holyoke S. R. Co., 273 U. S. 45, 47 S. Ct. Rep. 298. No question is involved here of the exercise by the state of authority by virtue of its police powers. Cf. Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. Rep. 324; Morris v. Duby, 274 U. S. 135, 47 S. Ct. Rep. 548.

Now, it appears from the testimony of the complainants that the respondents have been transporting pas-

sengers both from the east and west in considerable numbers to Emmitsburg as either a point of destination or for the purpose of transfer to the south and that the respondents are therefore maintaining a bona fide interstate route for the transportation of passengers from Pittsburgh and other points to and through Emmitsburg to Baltimore and Washington. This is clearly an interstate transportation and there is not a scintilla of evidence to the contrary. "Whether interstate service is necessary, proper, or convenient is not a matter to be determined by the state": Nevin Bus Lines, Inc., v. P. S. C., supra (p. 372). The impropriety of state interference is thus stated by Mr. Justice BRANDEIS in Buck v. Kuykendall, supra (p. 316): "Moreover, it determines whether the prohibition shall be applied by resort, through state officials, to a test which is peculiarly within the province of the federal action—the existence of adequate facilities for conducting interstate commerce."

It seems to us far fetched to convict the respondents of engaging in a "disreputable subterfuge" to avoid state regulation on the strength of the evidence offered by complainants. The commission relies for its conclusions upon the facts that the route was ten miles longer as operated by respondents and that Gettysburg was a better focal or junction point than Emmitsburg, and upon the conduct of the respondents to which we will refer in the other branch of the case. From a factual standpoint there is a complete answer by the respondents in that Emmitsburg is a natural junction point for the lines as operated by respondents and there is a different territory to be accommodated and traffic obtained for the utility. That there is ample ground for the assumption that there is available traffic on the Emmitsburg route is demonstrated by the fact that the commission permits another utility operating between Philadelphia and Pittsburgh to use a route

which parallels the route of respondents and is located just within the state lines but so laid out as to reach all of the important points except Emmitsburg. From a legal standpoint it appears that the respondents are operating a route which is clearly interstate from Pittsburgh through Emmitsburg to points south and likewise from Philadelphia to Emmitsburg where connections are made. As we have shown, the laying out of interstate routes is not a matter for control by a state commission and the handling of traffic between points in Pennsylvania through Emmitsburg is an incident to that interstate business. Such interstate commerce may not be interfered with by the state authorities. This is particularly so in view of the proportion which this traffic bears to the entire business of the company. It requires clear evidence to sustain such a finding as that of the commission with reference to this traffic, and the record is void of evidence, in our opinion, which would support such a conclusion. If the traffic at Emmitsburg were negligible, as in the Rhode Island case (21 Fed. [2d] 83), a different question would be presented. Also, see Waer Bus Co. v. P. S. C., 117 Pa. Superior Ct. 514, 178 A. 157.

II. We are in accord with the conclusion of the commission that the respondents have been engaged in intrastate transportation in carrying passengers between points in Pennsylvania without passing out of the state. Where there is sufficient evidence to support the conclusion of the commission, the order of the commission will not be reversed: Wilkes-Barre Co. v. P. S. C., 70 Pa. Superior Ct. 464; York Motor Express Co. v. P. S. C., 110 Pa. Superior Ct. 197, 168 A. 327; Waer Bus Co. v. P. S. C., supra. Not only, in our opinion, is the evidence sufficient to support the conclusion reached by the commission, but we are unable to see how they could have come to a different conclusion, as a reference to the testimony will disclose.

A witness, Lefold, testified that six passengers entered one of respondents' busses at Gettysburg and departed at Philadelphia. Their tickets named as the points of origin and destination Gettysburg and Camden, New Jersey. This witness testified: "He [one of the passengers] raised a holler about it [that his ticket named Camden as a point of destination] and thought he had to pay more money, and then the driver told him that he had to sell it that way. He said it didn't cost any more money." Another witness, Brinton, purchased a ticket at the Nevin Bus Terminal in Philadelphia. He asked for a ticket to Gettysburg. "The clerk at the desk said that we are not allowed to sell tickets from Philadelphia to Gettysburg but they would sell me a ticket from Philadelphia to Emmitsburg and the fare was the same, and when the bus got to Gettysburg I could get off." The witness then asked how he was going to get back to Philadelphia and the clerk said: "Go into the restaurant where the bus stops and the clerk there will sell you a ticket reading from Gettysburg to Camden." Another witness, Stretch, went to the advertised terminal of the respondents in a hotel at Waynesboro, Pennsylvania, and asked for a ticket to Pittsburgh and was given a ticket to East Palestine, Ohio. The witness, on noticing the destination named on the ticket called this fact to the attention of the clerk who replied that it did not make any difference, to get off at Pittsburgh, and said: "You know we are not allowed to sell tickets within the state." The witness used the ticket to Pittsburgh and, although the driver knew that he was leaving the coach at Pittsburgh, he lifted the ticket and did not give him any coupon entitling him to a ride to East Palestine.

There was other evidence to the same effect from other witnesses, and, in addition, it was shown that a considerable number of passengers entered and left the coaches within the state of Pennsylvania and without

leaving it and before they arrived at either Philadelphia or Pittsburgh where it might be suggested that the passengers intended to continue their journey to another state. Taking into account the extent of transportation between points within the state without passing out of the state and the knowledge which the employees of the company had of the fact that passengers were not bona fide interstate passengers, the evidence fully warranted the conclusion reached by the commission that such traffic was strictly intrastate. It does not appear from any evidence that the requirement that the respondents should secure a certificate of public convenience before handling intrastate business prejudiced interstate commerce in any way. The case of Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. Rep. 502, was one in which the utility sought to avoid state regulation by selling tickets to a point beyond the intended destination of the passengers and in another state. On that subject the Supreme Court said (p. 168) : "The legal character of this suburban bus traffic was not affected by the device of requiring the payment of a fare fixed for some Michigan point or by Sprout's professing that he sought only passengers destined to that state [Indiana]. The actual facts govern."

While this finding of the commission is sufficient to sustain an order to cease and desist, as the commission's order was drawn it required the utility to desist from carrying passengers between points in Pennsylvania east of Emmitsburg and points west of Emmitsburg and in the state of Pennsylvania. This cannot be sustained under the proofs. The first and sixth assignments of error are sustained.

The order of the commission is reversed, and it is directed that the record be returned to the commission for the purpose of entering a cease and desist order not inconsistent with this opinion.