Atlantic Freight Lines, Inc., Appellant, *v.* Pennsylvania Public Utility Commission.

Argued April 20, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Laurence H. Eldredge,* with him *Dean D. Sturgis, Herbert Baker* and *Norris, Bell, Lex, Hart & Eldredge,* for appellant.

*Charles E. Thomas,* with him *Albert E. Luttrell* and *Lloyd S. Benjamin,* for Pennsylvania Public Utility Commission, appellee.

*Harold S. Shertz,* with him *Paul F. Barnes* and *Shertz, Walsh, Barnes & Shertz,* for intervenors.

*Frederick L. Kiger,* submitted a brief for intervenor.

OPINION BY HIRT, J., July 27, 1948:

Atlantic Freight Lines, Inc., the appellant, is a common carrier, incorporated for "the transportation of

freight, merchandise and other personal property by means of motor vehicles or similar conveyances in interstate commerce only". We, will refer to this carrier as Atlantic. Based upon information in reports of its investigators, Pennsylvania Public Utility Commission initiated this proceeding on its own motion. The complaint charged three separate violations of Article II, § 201(b) or Article VIII, § 804(a) of the Public Utility Law of May 28, 1937, P. L. 1053 and its amendments, 66 PS 1121, 1304, in three instances, in which it was alleged that Atlantic transported property for compensation between points in this State as a motor carrier without a certificate of public convenience or permit. Specifically, the commission's complaint charged in substance that Atlantic on August 17, 1946, by means of leased equipment, consisting of a tractor and trailer, "transported for compensation approximately 30,000 pounds of sugar from Pennsylvania Sugar Refining Company, Philadelphia, Pennsylvania to Potter McCune Company, McKeesport, Pennsylvania"; and that on September 10 and 11, 1946, by means of similar leased equipment, this carrier transported two separate truck loads of sugar, of 30,000 pounds each, from the same refinery in Philadelphia and delivered one of them to American Home Foods, Inc., in Pittsburgh and the other to a consignee in Braddock, Pennsylvania. The freight charges in all three instances were at the rate of 35 cents per cwt. An answer was filed to the complaint in which Atlantic admitted the carriage of sugar as alleged, but averred that the driver of the truck in each instance was instructed to transport the shipment to destination over designated highways in Maryland and Pennsylvania.

On testimony which is not disputed, the commission found that the truck load of sugar delivered to McKeesport was transported from Philadelphia "over U. S. Highway 1 to Baltimore, Maryland, thence over U. S. Highway 40 through Maryland and Pennsylvania

to Uniontown, Pennsylvania, thence over Pennsylvania Highway 51 to Pittsburgh, Pennsylvania, thence over Pennsylvania Highway 30 to McKeesport, the point of destination." Upon entirely sufficient evidence the commission also found that the transportation of 30,000 pounds of sugar from Philadelphia to Pittsburgh, the second subject of complaint, was over highway routes wholly within the State of Pennsylvania. As to the third shipment to a consignee in Braddock, the commission found the evidence insufficient to determine what route was travelled in making delivery. Upon findings to the effect that all three of the shipments, complained of, were intrastate, the Public Utility Commission entered a cease and desist order restraining Atlantic from like transportation service "except as specifically permitted by certificates of public convenience issued by this Commission." No certificate nor permit was ever issued to Atlantic by the Public Utility Commission authorizing it to transport property intrastate.

It is conceded, as it must be, that the restraining order in this case is proper as applied to freight transportation between two points in Pennsylvania over highways wholly within the State. This appeal is directed solely to the order insofar as it restrains transportation between Philadelphia and the Pittsburgh area over highways through the State of Maryland. It is seriously contended that the route, above quoted from the commission's finding, over which the shipment of sugar was transported from Philadelphia to McKeesport, had been approved by the Interstate Commerce Commission, as evidenced by the interstate certificate of public convenience and necessity held by Atlantic; and that therefore the order of our Public Utility Commission is an unwarranted intrusion of a federal field assigned exclusively to the Interstate Commerce Commission by Congress under Article 1, Section 8 of the Constitution of the United States.

On appeal to us we may not vacate an order of the commission except for error of law or lack of evidence to support its findings. Section 1107 of the Public Utility Code, as amended by the Act of July 3, 1941, P. L. 267, 66 PS 1437. *Nevin B. Lines, Inc., et al. v. P. S. C.*, 120 Pa. Superior Ct. 266, 182 A. 80. In the main we find ourselves in agreement on the law and particularly with this statement from appellant's brief: "(1) what is bona fide interstate commerce is a fact; and (2) is a fact which must be determined by an administrative agency or a court when the issue is raised. Our point is that since the enactment of the Federal Motor Carrier Act of 1935 the conclusive determination of that fact is vested in the Interstate Commerce Commission. If the question comes before a state utility commission or a state court, it must determine the fact. If the Interstate Commerce Commission has not already determined it, the commission or court must use its best judgment in initially answering the question. But where the Interstate Commerce Commission has considered this question and has determined that certain transportation is bona fide interstate transportation, no state commission or court may thereafter collaterally attack that finding in another proceeding." The highways belong to the State and in general it may make provision for securing the safety and convenience of the public in the use of them by limiting or excluding vehicles of carriers for hire. But whether interstate service is necessary, proper or convenient is not a matter to be determined by the State. *Nevin Bus Lines, Inc. v. P. S. C.*, 99 Pa. Superior Ct. 370; *Buck v. Kuykendall*, 267 U. S. 307, 45 S. Ct. 324. And when the Interstate Commerce Commission under authority vested in it by Congress has authorized transportation over a stated route, even between two points in the same State, its order designating the movement as interstate commerce is binding on the State and cannot be questioned collaterally. *Nevin B. Lines,*

*Inc., et al. v. P. S. C.*, supra; Cf. *United States v. Yohn*, 275 Fed. 232, affirmed in 280 Fed. 511.

Regulation of interstate highway transportation is vested in the Interstate Commerce Commission by the Motor Carrier Act of August 9, 1935, 49 U. S. C. A. § 301, et seq., and by that Act of Congress controverted questions of fact were entrusted to the commission. *United States v. Maher*, 307 U. S. 148, 154, 59 S. Ct. 768. Under the definitions of the Act, "interstate commerce" may include transportation of goods "between places in the same State through another State...." 49 U. S. C. A. § 303 (*a*), (10), (*Central Greyhound Lines v. Mealey*, 334 U. S. 653, 68 S. Ct. 1260), but with the limitation that "Nothing in this chapter shall be construed to . . . authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof." 49 U. S. C. A. § 302(*b*).

We are unable to find that the Interstate Commerce Commission assumed jurisdiction of appellant's transportation by truck through Maryland, between two points in Pennsylvania, except as a part of a haul from the origin of a shipment in one State to its destination in another State, or that it has determined that truck transportation of property by Atlantic from Philadelphia to the Pittsburgh area, over any route, is in fact interstate commerce.

The route as approved by the Interstate Commerce Commission upon which appellant relies, is thus described in the certificate of public convenience and necessity issued to it by that commission: "Between Pittsburgh, Pa., and Newark, N. J. From Pittsburgh over Pennsylvania Highway 51 to Uniontown, Pa., thence over U. S. Highway 40 to Baltimore, Md., and thence over U. S. Highway 1 to Newark, and return over the same route. Service is authorized to and from

the intermediate points of Uniontown and Philadelphia, Pa., Baltimore, Md., Trenton, N. J., those in Pennsylvania within 20 miles of Pittsburgh, and those within 25 miles of New York, N. Y.; and the off-route points of East Riverton, N. J., and those in Pennsylvania within 20 miles of Pittsburgh."

It seems reasonably clear from the above language of the certificate that what was authorized by the commission was interstate transportation over stated highways from Pittsburgh to Baltimore, Maryland, to Newark, New Jersey, and return, and that common carrier service was permittdd between certain intermediate points of origin in one state and of destination in another. Clarification of the order, indicating that intent, is to be found in the Report and Order of the Interstate Commerce Commission in the proceeding in which appellant's interstate rights were adjudicated. It was there recognized that Atlantic was entitled to "grandfather" rights acquired from a predecessor. Appellant was entitled to the benefit of the proviso of § 206 of the Motor Carrier Act, 49 U. S. C. A. 306(a), relating to "grandfather" rights, only to the extent of actual and bona fide operations in interstate commerce on or before June 1, 1935. *Loving et al. v. United States*, 32 F. Supp. 464. The Interstate Commerce Commission, on the evidence before it, found that the prior shipments in the "grandfather" service were "between Baltimore, on the one hand, and, on the other, points in West Virginia and western Pennsylvania, including the Pittsburgh area, and between New York, N. Y., and certain northern New Jersey points, on the one hand, and the Pittsburgh area, on the other". There is no reference in the report to any evidence of shipments between Philadelphia and the Pittsburgh area from which "grandfather" or any other rights to transportation between these two points could be inferred. The Interstate Commerce Commission approved transportation from and to the Pittsburgh area along an interstate route which

included Philadelphia but only as to shipments between states. It did not authorize by implication or otherwise the transportation of goods, between points of both origin and delivery within Pennsylvania, though over Maryland highways. Since the commission has not characterized such transportation interstate, our Public Utility Commission had jurisdiction to inquire whether the commerce in question was intrastate, in fact. This language of the Chief Justice in *Eichholz v. Public Service Commission*, 306 U. S. 268, 59 S. Ct. 532, is pertinent: "We may assume that Congress could regulate interstate transportation of the sort here in question, whatever the motive of those engaging in it. But in the absence of the exercise of federal authority, and in the light of local exigencies, the State is free to act in order to protect its legitimate interests even though interstate commerce is directly affected." *Ryan et al. v. Pa. P. U. C.*, 143 Pa. Superior Ct. 517, 17 A. 2d 637 (allocatur refused, and certiorari to the Supreme Court of the United States denied, 314 U. S. 640), is to the same effect. In both the *Eichholz* and the *Ryan* cases the factual background was somewhat similar to that of the present proceeding.

Accordingly our Public Utility Commission had jurisdiction also to determine whether the carriage of sugar across the State line in this case was a mere subterfuge to evade the regulatory authority of this State. We quoted the applicable principle in *Blackmore et al. v. P. S. C.*, 120 Pa. Superior Ct. 437, 448, 183 A. 115, thus: " 'Interstate commerce, in order to be entitled to the protection of the federal Constitution, must be real and bona fide. The question whether it is so is open to inquiry. . . . But the commerce thus protected is real commerce. It has never been held, and we believe never intended, that a mere fiction of interstate commerce may be so availed of as to deprive a state of its power to enforce sound regulation of the use of its highways in intrastate commerce': Inter-City Coach Co. v. Atwood,

21 Fed. (2d) 83, 85. (Appeal refused by Supreme Court, 278 U. S. 663.) As we have indicated, the question of subterfuge is one of fact to be determined by the commission. . . ." The proviso of § 206 of the Motor Carriers Act, relating to "grandfather" rights from bona fide operations, as a common carrier, has been thus construed: "The expression, 'in bona fide operation', suggests absence of evasion, excludes the idea that mere ability to serve as a common carrier is enough, includes actual rather than potential or simulated service, and in context implies recognition of the power of the State to withhold or condition the use of its highways in the business of transportation for hire. Plainly the proviso *McDonald v. Thompson*, 305 U. S. 263, 59 S. Ct. 176. on public highways of a State in defiance of its laws": does not extend to one operating as a common carrier The evidence here is entirely sufficient to support the conclusion of the commission that the movement of the shipment across the State line in this case was but a subterfuge to evade this State's requirements as to intrastate commerce. The intrastate rate for transportation of sugar between Philadelphia and the Pittsburgh area is 49 cents per cwt. as against the rate charged by appellant of 35 cents. The distance between the two points over highways wholly within Pennsylvania varies from 287.44 to 313 miles, according to the route taken. The segment of the interstate route, between the two points, involved 348 miles of highway travel. The evidence establishes that the normal route between Philadelphia and the Pittsburgh area is intrastate and can be driven by truck in 10 hours whereas the interstate route involves driving time (including an obligatory rest period) of about 18 hours. Appellant had a terminal in Baltimore but the truck in making the shipment in question did not, and had no occasion to, report there. There was no pick up nor delivery of any merchandise at any point outside of Pennsylvania. Atlantic's evidence failed to establish any legitimate reason for making the in-

trastate shipment in question without prior submission to the commission of this State for approval of the service.

The restraining order entered by the Public Utility Commission was right and proper under all of the evidence in this proceeding. Cf. *Interstate Busses Corporation v. Holyoke St. Ry. Co.*, 273 U. S. 45, 47 S. Ct. 298; *Eichholz v. Public Service Commission*, supra; *Ryan et al. v. Pa. P. U. C.*, supra; *Railway Exp. Agcy. Inc. v. Pa. P. U. C.*, 134 Pa. Superior Ct. 405, 4 A. 2d 176; *Blackmore et al. v. P. S. C.*, supra. Authorities such as *Hanley v. Kansas City Southern Ry. Co.*, 187 U. S. 617, 23 S. Ct. 214 and our case of *Nevin B. Lines, Inc., et al. v. P. S. C.*, supra, have no application to the facts found by the commission as established by the evidence in this proceeding.

Order affirmed.