CLARK *v.* PUBLIC SERVICE COMMISSION OF
MARYLAND ET AL.
(Two Appeals in Separate Records)

[Nos. 94 & 103, October Term, 1955.]

122

*Decided February 14, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Edwin A. Gehring,* with whom was *James J. Doherty* on the brief, for the appellant.

*Leon H. A. Pierson* for the Public Service Commission of Maryland.

*William H. Hudgins,* with whom was *Joseph M. Wyatt* on the brief, for City Express, Inc.

DELAPLAINE, J., delivered the opinion of the Court.

Francis Woodrow Clark, doing business as Baltimore-Washington Express Company, holds a certificate of convenience and necessity from the Interstate Commerce Commission authorizing him to transport freight in inter-

state commerce between Baltimore and Washington. In 1953 the Public Service Commission ordered him to cease transporting between Baltimore and Annapolis. He has appealed here from two orders of the Circuit Court of Baltimore City affirming orders of the Commission.

The first appeal, No. 94, arose from a complaint filed by City Express, Inc., on July 17, 1952, that appellant was infringing upon its permit to transport freight between Baltimore and Annapolis.

The second appeal, No. 103, arose from the Commission's refusal to grant a permit to appellant to operate as a common carrier of freight between Baltimore and Annapolis.

### No. 94. Complaint Case.

On March 25, 1941, appellant took charge of the freight business of F. E. Douglas and J. K. Schilling, a partnership operating between Baltimore and Washington. The Interstate Commerce Commission had granted the partnership a certificate of convenience and necessity under the "grandfather clause" of the Federal Motor Carrier Act of 1935. That clause provides that any carrier who was in *bona fide* operation on June 1, 1935, and who filed an application with the Commission together with proof of such operation, was entitled to receive a certificate of public convenience and necessity without further proof. 49 U. S. C. A., sec. 306.

On May 9, 1942, appellant was issued a new certificate authorizing him to transport general commodities, with some exceptions, in interstate commerce between Baltimore and Washington over designated regular routes, and to give service to and from all intermediate points and the off-route points of Fort George G. Meade, Gambrills, Millersville and Odenton, all in the State of Maryland.

Appellant admitted that for 11 years, from March 25, 1941, to April 1, 1952, he hauled freight from Baltimore to Annapolis, not only by way of Washington, as authorized by the Interstate Commerce Commission, but

also by direct route over Maryland Highway 2. He said that he started using the direct route during the Second World War when the Federal Government, on account of the shortage of gasoline, ordered motor carriers to use the most direct routes. He admitted that he had never applied to the Public Service Commission for a permit, but he claimed that on the advice of counsel he discontinued intrastate operations on April 1, 1952. He asserted that he gave instructions to his drivers to cross the District of Columbia line before going to Annapolis, and he thought that he was thereby complying with his certificate from the Interstate Commerce Commission.

The Commission's Director of Transportation requested three of his assistants to make an investigation of the route taken by appellant's truck from Baltimore to Annapolis. They followed the truck on August 29, September 2, and September 3, 1952.

On August 29 the investigators followed the truck on the Washington Boulevard to the Old Bladensburg Road, and then across the District of Columbia line three-tenths of a mile. The truck, without making any delivery in the District, then returned over the Old Bladensburg Road and the Defense Highway to Annapolis.

On September 2 the investigators followed the truck on Maryland Highway 2 and U. S. Route 301 to Glen Burnie, then to Parole, and then over the Defense Highway to Annapolis. The truck did not go into the District.

On September 3 the investigators followed the truck on U. S. Route 1 to the intersection of the Old Bladensburg Road at the Peace Cross, and then over the Defense Highway to Annapolis. Again the truck did not go outside the State.

On July 2, 1953, the Commission reached the conclusion that appellant's operations were not *bona fide* interstate commerce, and thereupon passed an order requiring him to cease such operations.

On August 23, 1953, appellant filed his first bill of complaint praying the Circuit Court to declare the Commission's order illegal, null and void, and to enjoin the

Commission from enforcing it. The Commission and City Express, Inc., demurred to the bill. The Court passed an order sustaining the demurrers and dismissing the bill.

Appellant contends on his first appeal here that his certificate from the Interstate Commerce Commission gives him the authority to engage in interstate commerce, and that his operations are beyond the jurisdiction of the Public Service Commission.

The Federal Motor Carrier Act defines the term "interstate commerce" as commerce between any place in a State and any place in another State or between places in the same State through another State. The term "State," as used in the Act, means any of the several States or the District of Columbia. 49 U. S. C. A., sec. 303.

In *Eichholz v. Public Service Commission of State of Missouri*, 306 U. S. 268, 622, 59 S. Ct. 532, 535, 83 L. Ed. 641, the carrier, who had been hauling freight from St. Louis, Missouri, to Kansas City, Missouri, went a half mile beyond the state line to the terminal in Kansas City, Kansas, before going to Kansas City, Missouri. It appeared that the Public Service Commission of Missouri had promulgated a rule, designed to promote proper and safe use of the state highways, requiring motor carriers operating under interstate permits to refrain from doing intrastate business. The carrier had obtained a permit from the Commission to operate in interstate commerce, but the Commission revoked it on the ground that he had engaged in intrastate commerce. It was held by the United States Supreme Court that the Commission's rule was not an improper burden upon interstate commerce, and that the Commission's authority to revoke a carrier's interstate permit was not superseded by the Federal Motor Carrier Act where the Interstate Commerce Commission had not acted upon the carrier's application for a permit.

In that case the carrier relied upon the decision in *Missouri Pacific R. Co. v. Stroud*, 267 U. S. 404, 45 S. Ct.

243, 69 L. Ed. 683, that transportation between two cities in the same State partly within and partly outside of the State was interstate commerce. He contended that the hauling from St. Louis over the state line to Kansas City, Kansas, of merchandise consigned to persons in Kansas City, Missouri, and hauling it back again to its intended destination in Kansas City, Missouri, was interstate transportation. Chief Justice Hughes, in delivering the unanimous opinion of the Court, refrained from stating that Congress could not regulate transportation of that sort, inasmuch as such a ruling was not necessary for the decision of the case. However, the Chief Justice made the following comment:

> "We may assume that Congress could regulate interstate transportation of the sort here in question, whatever the motive of those engaging in it. But in the absence of the exercise of federal authority, and in the light of local exigencies, the State is free to act in order to protect its legitimate interests even though interstate commerce is directly affected. * * * If appellant's hauling of the merchandise in question across the state line was not in good faith but was a mere subterfuge to evade the State's requirement as to intrastate commerce, there is no ground for saying that the prohibition of the use of the interstate permit to cover such transactions, and the application of the Commission's rule prohibiting them in the absence of an intrastate certificate, was an unwarrantable intrusion into the federal field or the subjection of interstate commerce to any unlawful restraint. And if the prohibition of such transactions was valid, the Commission was undoubtedly entitled to enforce it by revoking appellant's permit for breach of the condition upon which it was issued and accepted by appellant."

In *Ryan v. Pennsylvania Public Utility Commission,* 143 Pa. Super. 517, 17 A. 2d 637, *certiorari* denied 314 U. S. 640, 62 S. Ct. 80, 86 L. Ed. 514, the Public Utility

Commission found that the carrier was hauling freight from Pittsburgh to Washington, Pennsylvania, by way of Wheeling, West Virginia, a distance of 90 miles, while the direct route was only 29 miles; and from Pittsburgh to Uniontown, Pennsylvania, by way of Wheeling, a distance of 128 miles, while the direct route was only 52 miles. The Court found that the transportation was actually intrastate, and was routed through Wheeling as a subterfuge to avoid the jurisdiction of the Commission. The Court accordingly held that the certificate from the Interstate Commerce Commission authorizing the carrier to operate in interstate commerce could not be construed to grant authority to engage in that sort of transportation.

In *Atlantic Freight Lines v. Pennsylvania Public Utility Commission,* 163 Pa. Super. 215, 60 A. 2d 589, *certiorari* denied 336 U. S. 925, 69 S. Ct. 643, 93 L. Ed. 1087, the Court held that where the Interstate Commerce Commission had approved transportation from and to the Pittsburgh area over an interstate route, which included Philadelphia but only as to shipments between States, and had not authorized transportation of goods between points of both origin and delivery within Pennsylvania, though over Maryland highways, the Public Utility Commission of Pennsylvania had jurisdiction to determine whether the carriage of goods by motor carrier between Philadelphia and the Pittsburgh area over highways through the State of Maryland was a mere subterfuge to evade the regulatory authority of the State of Pennsylvania.

In accord with these decisions, we hold that a certificate of public convenience and necessity issued by the Interstate Commerce Commission to a carrier to transport freight in interstate commerce between a point in Maryland and a point in another State or the District of Columbia does not authorize him to transport between points in Maryland by a merely colorable interstate route, nor interfere with the Maryland Public Service Commission's jurisdiction to order him to cease such transportation.

Whether a carrier's transportation of intrastate freight over an indirect interstate route is *bona fide* interstate commerce or merely a subterfuge to avoid the Public Service Commission's jurisdiction is primarily an administrative question to be determined by the Commission. The solution of the problem depends upon the places of origin and destination and whether the routes are necessary and reasonable. Moreover, every final decision, order, rule or regulation of the Commission shall be *prima facie* correct and shall be affirmed unless clearly shown to be (1) in violation of constitutional provisions, or (2) not within the statutory authority or jurisdiction of the Commission, or (3) made upon unlawful procedure, or (4) arbitrary or capricious, or (5) affected by other error of law, or (6) if the subject of review is an order entered in a contested case after hearing, such order is unsupported by substantial evidence on the record considered as a whole. Code Supp. 1955, art. 78, sec. 90; *Hessey v. Capital Transit Co.*, 193 Md. 265, 66 A. 2d 787, 10 A. L. R. 2d 1114.

Accordingly, on an appeal from an order of the Commission requiring a carrier to discontinue the transportation of intrastate freight over an indirect interstate route because it is not *bona fide* commerce, the burden of proof is on the carrier to show by clear and satisfactory evidence that the order is unlawful or unreasonable, and the Court of Appeals will not disturb the findings of the Commission when they are supported by substantial evidence.

In this case it appeared that appellant's predecessors, Douglas and Schilling, carried a considerable volume of freight in interstate commerce. There was evidence that in the first half of 1935 they carried nearly a thousand shipments from Baltimore to Washington. But it is evident that during the past twenty years appellant's interstate business dwindled, and he openly engaged in intrastate commerce without a permit, and then resorted to the plan of hauling from Baltimore to Annapolis by taking an indirect route of 70 miles by way of the

District of Columbia, instead of the direct route of 26 miles, in an attempt to evade the Maryland law.

The Commission held that appellant should not be allowed to convert intrastate commerce into interstate commerce by merely crossing the state line. We are satisfied that the evidence was sufficient to support the Commission's finding that appellant's transportation was not *bona fide* interstate commerce, but that the indirect route across the District line was merely a subterfuge to circumvent the jurisdiction of the Commission.

As we have indicated, the Public Service Commission has no right to prevent appellant from engaging in any *bona fide* interstate commerce between Baltimore and Annapolis by way of the District of Columbia. We will, therefore, remand this case to the Court below with instruction to amend its order so as to restrain only intrastate transportation.

### No. 103. Application Case.

On March 13, 1953, appellant applied to the Public Service Commission for a permit to operate as a carrier of freight between Baltimore and Annapolis over Maryland Highway 2. He produced witnesses, including the County Manager of Anne Arundel County, who testified that his service had been satisfactory and recommended that he be granted a permit.

The application was opposed by City Express, Inc., which has hauled freight between Baltimore and Annapolis by permit from the Commission since January 1, 1952, succeeding the Baltimore and Annapolis Railroad Company. Horace D. Barker, general manager of the protesting company, testified that the volume of freight between Baltimore and Annapolis was not sufficient at that time to demand more than one carrier. He testified that in 1953 the revenue from the company's operations between these two cities was only $22,000. He stated that the company was able to haul the volume of freight appellant had been hauling, which had produced a revenue of about $14,000 a year. He also declared

that if there should be any need for additional service, the company would be ready and willing to furnish it.

Barker further asserted that the company has been furnishing daily service between Baltimore and Annapolis, usually picking up freight every day for delivery on the following day. He further stated that the company has an emergency truck for immediate delivery of perishable goods. He declared that there has never been any complaint of the company's service.

On September 14, 1954, the Commission, finding the service furnished by City Express, Inc., to be adequate, denied appellant's application. On November 12, 1954, appellant filed his bill of complaint praying the Court to declare this order of the Commission null and void and to direct the Commission to grant him a permit.

The Commission and City Express, Inc., demurred to the bill. The Court, holding that the evidence supported the finding of the Commission, sustained the demurrers and dismissed the bill. From that order plaintiff took the second appeal.

The duty of granting permits for the transportation of freight and passengers for hire is an important administrative task which has been imposed by the Legislature upon the Public Service Commission. The task of passing upon applications for permits requires consideration of many elements such as advisability, practicability, and public necessity or convenience. *Hartman v. Public Service Commission*, 179 Md. 285, 19 A. 2d 709. An order of the Commission refusing to grant a permit to an applicant for the operation of motor trucks and granting a permit to another to operate over the same route is *prima facie* correct, and a suit to prevent enforcement of the Commission's order must clearly and satisfactorily allege facts showing that the order is arbitrary or unreasonable.

It is entirely true that the obligation of the Public Service Commission to protect a common carrier against competition in order to conserve existing investments is secondary to the paramount obligation of the Commission

to secure adequate and permanent service for the public at the least possible cost. But, as this Court said in *Public Service Commission v. Williams,* 167 Md. 316, 333, 173 A. 259, it is equally true that the Commission may act unreasonably if it should authorize a common carrier to enter similar service into a field having an established system of transportation which is rendering adequate, continuous, and satisfactory service to the public at reasonable cost. We also repeat that competition is a legislative, not a judicial question, unless the decision of the administrative body is shown to be arbitrary or unreasonable, and that it is unprecedented for this Court to say that the Public Service Commission should grant competition where the Commission has found adequate service. *Bosley v. Quigley,* 189 Md. 493, 56 A. 2d 835; *Albert v. Public Service Commission,* 209 Md. 27, 120 A. 2d 346.

In this case the evidence failed to show that the service furnished by City Express, Inc., was inadequate or unsatisfactory. The testimony of Barker, its general manager, was uncontradicted that there had been no complaint of its service. His testimony was also uncontradicted that it had ample equipment to carry all freight to Annapolis and intermediate points. He said that the company had 32 trucks, 39 trailers, 40 tractors, and 11 company and service cars. In addition, its rates have been about 10 cents per 100 pounds lower than appellant's rates.

As the evidence in this case did not show that the order of the Commission was arbitrary or unreasonable, but on the contrary was sufficient to support the finding that City Express, Inc., was furnishing the public adequate and satisfactory service, the order of the Court below dismissing appellant's bill must be affirmed.

> *Case No. 94 remanded for amendment of order, with costs to appellees.*
> *Order in Case No. 103 affirmed with costs to appellees.*