## Pennsylvania Public Utility Commission *v.* Jones Motor Company, Inc., Appellant.

450

Argued December 9, 1958.   Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*William J. Wilcox* and *Christian V. Graf,* for appellant.

*William A. Goichman* and *Louis J. Carter,* Assistant Counsel, with them *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*Paul F. Barnes,* with him *Shertz, Barnes & Shertz,* for intervening appellees.

OPINION BY HIRT, J., March 18, 1959:

On August 5, 1957, Pennsylvania Public Utility Commission, of its own motion, filed a complaint against Jones Motor Company, Inc., charging it with violation of Art. II, §202(b) and (c) of the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1122. The basis of the complaint was the transportation of commodities by motor truck as a common carrier between points in Pennsylvania without certification by the Commission. Highway Express Lines, Inc., and Modern Transfer Company, Inc., holders of certificates of public convenience issued to them by the Commission, were granted leave to intervene in the proceeding on their allegation that they were adversely affected by the unauthorized carrier activity of the respondent in Pennsylvania.

The complaint specifically charged 22 violations which included: eleven shipments originating in Philadelphia for delivery in Allentown, Bethlehem, Easton and Catasauqua, Pennsylvania; four shipments originating in Easton destined for Philadelphia and Hatboro, Pennsylvania; three shipments originating in Bethlehem for Philadelphia; one shipment originating in Oaks for Bethlehem; one shipment originating in Emmaus for Philadelphia; one shipment originating in Catasauqua for Philadelphia; and one shipment originating in Chester for Bethlehem. That these shipments had been made, was admitted by the respondent; in justification however it asserted certificates of public convenience and necessity issued by the Interstate Commerce Commission, specifically set forth in its answer to the complaint.

The respondent, Jones Motor Company, Inc., holds a number of certificates issued by Pennsylvania Public Utility Commission authorizing it to transport property as a Class A common carrier between points with-

in this State. But the extent of the common carrier rights is restricted for the most part to local transportation. They are enumerated in a finding of the Commission thus: ". . . it is authorized to transport property as a Class A carrier between Allentown and Easton and intermediate points via Bethlehem, Butztown, and Dryland; and it holds rights as a Class A carrier between Bethlehem, Allentown and Stroudsburg and intermediate points over specified routes; between Borough of Bally, Berks County and Philadelphia and intermediate points, including Spring City, Trappe, King of Prussia, and Bridgeport; between Philadelphia and Reading; and between Reading and Bally."

Jones Motor Company, Inc., under Interstate Commerce Commission certificate MC 4963 had authority to transport commodities "From Philadelphia over U. S. Highway 1 to New York and return over the same route." Under the same certificate ancillary carrier service by this respondent was authorized: "to and from off-route points . . . in that part of New Jersey within 35 miles of Princeton, N. J. . . ." Both Trenton and Clinton, N. J. are within 35 miles of Princeton.

Prior to August 18, 1952, Clinton Motor Express had interstate commerce rights, as a common carrier over U. S. Highway Route 22 between Allentown, Pennsylvania, via Clinton, to Elizabeth, New Jersey. On the above date Jones Motor Company, Inc., with the consent of the Interstate Commerce Commission, acquired by purchase all of the operating rights of Clinton Motor Express. After the sale was consummated, the Jones company, by I. C. C. certificate numbered MC 4963 Sub 7, was authorized to operate as a common carrier "Between Allentown, Pa., and Elizabeth, N. J. . . . over U. S. Highway 22 to junction New Jersey Highway 28" and thence to Elizabeth "and return over the same route". Under this certificate service was

also authorized "to and from all intermediate points and the off-route points . . . in Pennsylvania within 25 miles of Allentown".

The operation with which we are concerned in the shipments described in the complaint, consists in a combination of authorized service from Philadelphia under certificate MC 4963 to Clinton, N. J. joined by a "tacking" process upon that authorized by I. C. C. certificate MC 4963 Sub 7 which included service on U. S. Route 22 between Clinton and points within 25 miles from Allentown. Respondent admittedly in 1953 began the transportation of general commodities between the two areas of Philadelphia and Allentown under the above two I. C. C. certificates and has continued that service without authority from our Public Utility Commission. It is not without significance that the Jones company in 1950 had filed an application with our Public Utility Commission in an effort to consolidate its distinct and unconnected "northern" and "southern" class A routes in Pennsylvania, above referred to, for which it held Pennsylvania P. U. C. certificates of public convenience. The order of the Commission granted on the application allowed an extension of routes from Allentown to Pottstown, a distance of 13 miles which in effect, by connecting the two certified local areas, gave respondent intrastate common carrier rights between the Philadelphia area and Allentown and to Stroudsburg on the north. On appeal to this court, however by a number of carriers which had protested the application before the Commission, we reversed the order on the ground that inadequacy of existing service and the need for the additional service as proposed had not been proven. *Modern Tr. Co. et al. v. Pa. P. U. C.*, 179 Pa. Superior Ct. 46 (1955), 115 A 2d 887. An allocatur to the Pennsylvania Supreme Court was refused. Thus it not only

appears that respondent does not have intrastate rights for transportation between the Philadelphia and Allentown areas but it is established with finality that it is not entitled to certification to that end.

Jurisdiction over interstate transportation by motor vehicles was conferred on the Interstate Commerce Commission by the Federal Motor Carrier Act of August 9, 1935, as amended, 49 U.S.C.A. §301 et seq., which however in §302(b) provides: "Nothing in this chapter shall be construed to affect the powers of taxation of the several States or to authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof." Thus the Congress has asserted a hands-off policy by expressly recognizing the power of each State to regulate commerce within its borders. *Eichholz v. Public Service Commission*, 306 U. S. 268, 59 S. Ct. 532 was a case in which the Commission had revoked Eichholz' carrier permit on a finding that he had unlawfully engaged in intrastate commerce under the pretense of transacting interstate business. On appeal the District Court from the evidence found that the carriage of property from Missouri into Kansas and thence back into Missouri for delivery there was not " 'the normal, regular or usual route' for shipping merchandise between the two cities in Missouri" and the court accordingly refused to issue a permanent injunction restraining the State Commission from prosecuting actions against Eichholz for using State Highways in the transporting of property for hire in interstate commerce. On appeal, the Supreme Court of the United States in affirming the order said: "We may assume that Congress could regulate interstate transportation of the sort here in question, whatever the motive of those en-

gaging in it. But in the absence of the exercise of federal authority, and in the light of local exigencies, the State is free to act in order to protect its legitimate interests even though interstate commerce is directly affected." Cf. *Nevin B. Lines, Inc., et al. v. Public Service Commission*, 120 Pa. Superior Ct. 266, 272, 182 A. 80. Questions similar to those presented in the *Eicholz* case have been before this court, most recently in *Atlantic Freight Lines v. Pa. P. U. C.*, 163 Pa. Superior Ct. 215, 60 A. 2d 589 where we said: "Regulation of interstate highway transportation is vested in the Interstate Commerce Commission by the Motor Carrier Act of August 9, 1935, 49 U.S.C.A. §301, et seq., and by that Act of Congress controverted questions of fact were entrusted to the commission. United States v. Maher, 307 U. S. 148, 154, 59 S. Ct. 768. Under the definitions of the Act, 'interstate commerce' may include transportation of goods 'between places in the same State through another State . . .' 49 U.S.C.A. §303(a), (10), (*Central Greyhound Lines v. Mealey*, 334 U. S. 653, 68 S. Ct. 1260), but with the limitation that 'Nothing in this chapter shall be construed to . . . authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof.' 49 U.S.C.A. §302(b)." The *Atlantic Freight Lines* case involved shipments of sugar from a refinery in Philadelphia over highways in the State of Maryland and thence back into this State for delivery to consignees in Braddock, Pennsylvania. The Commission, after hearing, entered a cease and desist order prohibiting a continuance of this method of transportation under the guise of Interstate Commerce Commission authority. We affirmed the order in the application of the principle that a mere fiction of interstate

commerce may not be so availed of as to deprive a State of its power to enforce sound regulation of the use of its highways in interstate commerce. From the order an allocatur to our Supreme Court was refused, and certiorari to the United States Supreme Court denied. *Nevin B. Lines, Inc., et al. v. Public Service Commission,* supra, and *Ryan et al. v. Pa. P. U. C.,* 143 Pa. Superior Ct. 517, 17 A. 2d 637, have much in common with the above *Atlantic Freight Lines* case and on appeals were disposed of with similar results. Cf. *Service Storage & Transfer Co. v. Commonwealth of Virginia,* 199 Va. 797 (1958), 102 S. E. 2d 339.

The obvious intent of the Interstate Commerce Commission's certificate is to permit a carrier to engage in interstate commerce and regulation of such service is the extent of the Commission's jurisdiction. Moreover, interstate commerce, to be entitled to protection as such "must be real and bona fide": *Blackmore et al. v. Public Service Commission,* 120 Pa. Superior Ct. 437, 183 A. 115. Tacking of the authority in the present case, under certificate MC 4963 to that of certificate MC 4963 Sub 7 was entirely proper in establishing through routes in interstate commerce [Cf. 49 U.S.C.A. §316(c)] but such tacking cannot supply a carrier with authority to transport property in intrastate commerce. *Service Storage & Transfer Co. v. Commonwealth of Virginia,* supra. The Commission found that the shipments here involved were not bona fide interstate and in its order said: "It is quite apparent that we cannot, in these circumstances, regard routing via New Jersey under mere color of interstate operating authority as anything other than a subterfuge to provide what is in fact intrastate service." That conclusion was inevitable especially after respondent had been denied a certificate by our Public Utility Commission authorizing transportation of property intrastate between

Philadelphia and Allentown areas. The Interstate Commerce Commission did not at any time assume jurisdiction of carrier service, via New Jersey, between two points in Pennsylvania; the usual regular and normal route between Philadelphia and the Allentown areas in Pennsylvania was U. S. Highway 309, a distance of 55 miles; the distance by way of the circuitous route through New Jersey was 100 miles, with driving time of 3½ hours as against 2¼ hours over the direct intrastate route; the shipments in question here were all made at night; there was no terminal at Clinton and no stops, pickups, or deliveries were made en route in New Jersey; in the present order the Commission noted that no difference in freight rates was indicated, between those charged by respondent and the approved tariff rates applicable to certified intrastate carriers.

In this case the evidence was entirely sufficient to support the findings of the Commission that the Interstate Commerce Commission had not assumed jurisdiction of carrier transportation between two points in Pennsylvania, via New Jersey and that the movement by respondent across the State line was but a subterfuge to evade the State's requirements as to intrastate commerce. *Atlantic Freight Lines v. Pa. P. U. C.,* supra. Accordingly, the entry of a cease and desist order was proper in this case.

Order affirmed.