UNITED STATES ET AL. *v.* ATLANTA, BIRMINGHAM & COAST RAILROAD COMPANY.

No. 88. Argued January 29, 30, 1931.—Decided February 24, 1931.

*Assistant to the Attorney General O'Brian,* with whom *Solicitor General Thacher* and *Messrs. William G. Davis* and *Elmer B. Collins,* Special Assistants to the Attorney General, *Erwin N. Griswold,* and *Daniel W. Knowlton,* Chief Counsel, Interstate Commerce Commission, and *Edward M. Reidy,* Solicitor, were on the brief, for the United States et al.

*Mr. Robert C. Alston,* with whom *Messrs. F. B. Grier, Carl H. Davis,* and *John A. Hynds* were on the brief, for appellee.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

In this suit, brought in the federal court for northern Georgia, under the Urgent Deficiencies Act, October 22, 1913, c. 32, 38 Stat. 208, 219, the Atlanta, Birmingham & Coast Railroad Company seeks by supplemental bill to enjoin and annul an alleged order of the Interstate Commerce Commission dated October 9, 1929. No formal order was made. *Reorganization and Control of Atlanta, Birmingham & Atlantic Ry. Co.,* 158 I. C. C. 6, 14. The

action challenged as an illegal order is the following passage of the. Commission's report of that date concerning entries in the carrier's books of account:

" Upon consideration of the record, as supplemented, we find and conclude that the amount to be included in the balance sheet statement of the new company representing investment in road and equipment as of January 1, 1927, may not exceed $9,261,043.87. The company will be expected to adjust its accounts in accordance with this finding within 60 days from service of this report."

The United States and the Commission contended that the bill should be dismissed for want of jurisdiction, among other reasons, because the action complained of is not an order within the meaning of the Urgent Deficiencies Act. The District Court, three judges sitting, overruled that objection; heard the case on the merits; and entered a final decree which declared that the action of the Commission " in so far as the same fixes the amount at which the Complainant is to return its capital stock and its investment in road and equipment, be set aside . . . and that the supplemental application of the complainant on which said order was entered by the Interstate Commerce Commission stand for further hearing before said commission." 37 F. (2d) 401. The defendants appealed to this Court.

The Atlanta, Birmingham & Coast Railroad Company was incorporated in 1926 by the bondholders of the Atlanta, Birmingham & Atlantic Railway Company to take over upon foreclosure the property of the latter, consisting of 640 miles of line in Alabama and Georgia. The enterprise had been peculiarly disastrous to investors. Following long years of receivership with annual operating deficits there had been in 1915 a reorganization in which $35,000,000 in stocks and $14,500,000 in bonds were wiped out. Compare *Valuation of Atlanta, Birmingham*

& *Atlantic R. Co.*, 75 I. C. C. 645, 703. By the reorganization of 1926, $30,000,000 more of stock was wiped out and the holders of the $8,600,000 bonds then outstanding received for them only 60 per cent of their face value in 5 per cent preferred stock of the new company. The 1926 reorganization was effected pursuant to an agreement between the bondholders' committee, and the Atlantic Coast Line Railroad, under which the committee purchased at foreclosure sale all the property; transferred the same to the new company in exchange for all of its stock, being $5,180,344.07 redeemable preferred and 150,000 shares no-par common; transferred the common stock to the Atlantic Coast Line in consideration of its extinguishing the prior liens on the property, aggregating $4,080,699.80, and guaranteeing the preferred stock; and distributed the preferred stock among the bondholders. Thus, the Atlantic Coast Line acquired for $4,080,699.80 in cash and its guaranty of the preferred stock, complete ownership of the property subject only to the $5,180,-344.07 redeemable preferred stock. These two sums aggregate $9,261,043.87—the sum set forth in the passage of the report of October 9, 1929, which is challenged as an order.

The order of the Commission dated December 21, 1926, which authorized the new company to issue the preferred and common stock (117 I. C. C. 181, 439, 443), and thus made possible the 1926 reorganization, contained this provision:

" *Provided, however,* that authority to issue said stock is granted upon the express condition, that, for the purposes of the accounting, as provided in the classification of investment in road and equipment in the text of account 41, ' Cost of road purchased,' the cash value of the preferred stock issued must, in stating the transactions in the accounts, be reckoned on a basis not in excess of its

par value; and that the cash value of the common stock issued must be reckoned on a basis not in excess of the amount received therefor." [1]  117 I. C. C. 443.

When the books of the new company were being opened, its accountants sought to set up in its balance sheet as " Investment in road and equipment " the sum of $29,271,859 instead of the $9,261,043.87 above shown. The larger entry was contended for on the grounds that this amount (with adjustments) had, on July 20, 1923, been determined by the Commission pursuant to § 19a of the Act of March 1, 1913, c. 92, 37 Stat. 701, to be the value of the property for rate-making purposes, estimated on the basis of 1914 reproduction costs.   75 I. C. C. 645.   The Director of the Bureau of Accounts refused to permit the company to set up the investment of road and equipment as being $29,271,859.   Treating the preferred stock as having been paid for at par, he directed that the value of the 150,000 shares of common stock should be set up at $4,080,699.80, that being the sum of money

---

[1] The classification of primary accounts referred to as Account 41, " Cost of Road Purchased " prescribes:

" This account shall include the cash cost of any road or portion thereof purchased.  Where the contract of purchase includes not only road, but also equipment, securities, and other assets, the appraised value of such equipment, securities, and other assets shall be deducted from the total cash cost, and the remainder of the cash cost shall be charged to this account.  Where the consideration given for the property purchased is other than cash, such consideration shall be valued on a current cash basis. . . ."  See " Classification of Investment in road and Equipment of Steam Roads prescribed by Interstate Commerce Commission in accordance with Section 20 of the Act to Regulate Commerce," July 1, 1914, p. 29.

See also " Classification of Income, Profit and Loss and General Balance Sheet Accounts," id., July 1, 1914, p. 50, as amended August 19, 1921,—Account 751.  " Capital Stock. . . .  When such certificates or receipts have no par value they shall be included in this account at the amount corresponding to the cash received, or the cash equivalent if the consideration is other than cash."

which the Atlantic Coast Line had disbursed in extinguishing the prior liens upon the property.

The new company then filed an application with the Commission requesting a hearing in support of its contention that the above quoted proviso in the order of December 21, 1926, authorized such entry of $29,271,859; and requested that oral argument be permitted. Without hearing oral argument, the Commission denied the application on April 9, 1928. The original bill in this suit was then brought to set that order aside. The court granted the relief and directed that the company's application "stand for further hearing before said commission." *Atlanta, Birmingham & Coast R. Co.* v. *United States*, 28 F. (2d) 885. The Commission granted the further hearing and thereupon, on October 9, 1929, filed the report first cited. In it, the Commission stated that the value of the property for rate-making purposes fixed in 1923, pursuant to § 19a, is not "pertinent or material evidence in the determination of investment, as that term is used in our accounting regulations." The report concluded with the passage quoted which appellee contends amounts to an order. 158 I. C. C. 6, 14.

*First.* The jurisdiction conferred upon district courts under the Urgent Deficiencies Act is that formerly exercised by the Commerce Court over " cases brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission." Act of June 18, 1910, c. 309, §1, 36 Stat. 539. The action here complained of is not in form an order. It is a part of a report—an opinion as distinguished from a mandate. The distinction between a report and an order has been observed in the practice of the Commission ever since its organization—and for compelling reasons. Its functions are manifold in character. In some matters its duty is merely to investigate and to report facts. See *United States* v. *Los Angeles & Salt Lake R. Co.*, 273 U. S. 299, 310. In others, to make determinations. See *Great*

*Northern Ry. Co.* v. *United States,* 277 U. S. 172. In some, it acts in an advisory capacity. Compare *Minneapolis & St. Louis R. Co.* v. *Peoria & Pekin Union Ry. Co.,* 270 U. S. 580, 584–5. In others in a supervisory. Even in the regulation of rates, as to which the Commission possesses mandatory power, it frequently seeks to secure the desired action without issuing a command. In such cases it customarily points out in its report what the carriers are expected to do.[2] Such action is directory as distinguished from mandatory. No case has been found in which matter embodied in a report and not followed by a formal order has been held to be subject to judicial review.[3] In *Kansas City Southern Ry.* v. *United States,*

---

[2] See Advances in Rates, Western Case, 20 I. C. C. 307, 379; *Goldenberg* v. *Clyde S. S. Co.,* 20 I. C. C. 527, 529; *Pacific Coast Biscuit Co.* v. *S. P. & S. Ry. Co.,* 20 I. C. C. 546, 549; Proposed Schedules of Rates on Lumber, 20 I. C. C. 575. When the car service rule discussed in *United States* v. *New River Co.,* 265 U. S. 533, was first before the Commission, its report finding the rule unreasonable concluded with the statement: "We have not required that car service rules be filed as tariff schedule. We will not in this proceeding direct that the rules which we herein find to be reasonable be so filed. We shall expect, however, that defendants will promptly amend their car service rules so as to conform with our findings and evidence same by filing copies thereof with us." Referring to this statement, this Court said (p. 540–1): "The Commission refrained from making an order that the rule be filed as a tariff schedule, but announced that it expected the carriers promptly to amend their car service rules to conform with its findings." Compare *Colorado Fuel & Iron Co.* v. *Southern Pacific R. Co.,* 6 I. C. C. 488, 518, 587; *Milk Products Protective Assn.* v. *Delaware L. & W. R. Co.,* 7 I. C. C. 92, 175; *Board of Trade* v. *Nashville & St. Louis Ry. Co.,* 8 I. C. C. 503, 530; *Denison Light & Power Co.* v. *Missouri, K. & T. Ry. Co.,* 10 I. C. C. 337, 341.

[3] Where the application is for a certificate of public convenience and necessity the order issued is called a certificate. See *Chicago Junction Case,* 264 U. S. 258; *Colorado* v. *United States,* 271 U. S. 153.

231 U. S. 423, the accounting regulations which were challenged had been adopted by formal order of the Commission. Compare *Interstate Commerce Comm.* v. *Goodrich Transit Co.,* 224 U. S. 194. There are many cases in which action of the Commission, although embodied in the form of an order, has been held by this Court not to be reviewable under the Urgent Deficiencies Act.[4]

As the District Court said in passing upon the original bill now•relied upon: "Independently of the Commission's power under section 20, subsection 1 and subsection 5, to establish uniformity in and prescribe the forms of accounts of carriers, section 1, subdivision 20, authorizes the imposition of conditions upon its grant of a certificate of public convenience and necessity for the acquisition and operation of a railroad, and by necessary implication it has power to see that the condition is complied with. Disobedience to an order made to this end touching the accounts would be punishable under section 20, subsection 7, of the act as a willful failure to make a correct entry and the keeping of a record other than that approved by the Commission." 28 F. (2d) 887. The basis for such a liability should be certain. Compare *United States* v. *Fruit Growers Express Co.,* 279 U. S. 363, 369.

*Second.* In support of the contention that the passage in the report of the Commission of October 9, 1929, is legally an order, the Company insists that it must be

---

[4] *Procter & Gamble Co.* v. *United States,* 225 U. S. 282; *Hooker* v. *Knapp,* 225 U. S. 302; *Lehigh Valley R. Co.* v. *United States,* 243 U. S. 412; *United States* v. *Illinois Central R. Co.,* 244 U. S. 82, 89; *Delaware & Hudson Co.* v. *United States,* 266 U. S. 438; *United States* v. *Los Angeles & Salt Lake R. Co.,* 273 U. S. 299; *New York, Ontario & Western R. Co.* v. *United States,* 14 F. (2d) 850, affirmed 273 U. S. 652; *Piedmont & Northern Ry. Co.* v. *United States,* 280 U. S. 469. See also *Great Northern Ry. Co.* v. *United States,* 277 U. S. 172.

read in connection not only with the action of April 9, 1928, attacked by the original bill, but also with the certificate of public necessity and convenience dated October 26, 1926, authorizing the new company to acquire the property, and the order of December 21, 1926, authorizing the issue of the $5,180,344.07 preferred stock and 150,000 shares of no-par common. Neither the original bill nor the supplemental bill attacks either the certificate or the order of December 21st. The validity of the certificate and of that order is not now challenged. Moreover, the record discloses that the certificate and the order have been acted upon by the acquisition of the property and issue of the stock.

*Third.* The Company contends that the decree of the District Court on the original bill, in which the defendants acquiesced, is a final adjudication of the issues involved in this case. The original bill dealt with the order of April 9, 1928; the supplemental bill with the alleged order of October 9, 1929. The Commission insists that the decree on the original bill did not deal with the merits, but determined only that the company must be accorded a hearing on its application. We need not determine whether jurisdiction existed to review the action of April 9, 1928, or the scope of the issues litigated in the original suit. For a finding of jurisdiction to review that order, or acquiescence by the defendants in the decree rendered on the original bill, would not have made *res judicata* the question whether jurisdiction existed to review the later action of October 9, 1929. Compare *Cromwell* v. *County of Sac,* 94 U. S. 351; *Pell* v. *McCabe,* 250 U. S. 573, 577. The lack of power to review, because of the absence of any order, cannot be cured by bringing the suit in the form of a supplemental rather than a new bill. Jurisdiction is equally lacking in either case.

*Reversed.*