**PIERCE AUTO FREIGHT LINES, Inc., et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION et al., Interveners).**

Civil Action No. 2340.

District Court, D. Oregon.

Sept. 20, 1944.

Henry T. Ivers, of Seattle, Wash., Alfred A. Hampson, of Portland, Or., and William P. Ellis, of Salem, Or., for plaintiffs.

Robert L. Pierce, Sp. Asst. to Atty. Gen., Allen Crenshaw, Counsel for Interstate Commerce Commission, of Washington, D. C., Donald A. Schafer, of Portland, Or., for Consolidated Freightways, Inc.

Edward M. Berol, of San Francisco, for Oregon-Nevada-California Fast Freight, Inc.

Before WILBUR, Circuit Judge, and FEE and McCOLLOCH, District Judges.

JAMES ALGER FEE, District Judge.

This is an action to set aside and enjoin an order of the Interstate Commerce Commission by which Consolidated Freightways

Incorporated [1] and Oregon-Nevada-California Fast Freight Incorporated [2] were granted a certificate of public necessity and convenience [3] for certain operations as to which plaintiffs claim that they are, or will be, in competition either in whole or in part. Under other applications, both Consolidated and O.N.C. have been operating as common carriers by motor. Consolidated operates in many states including California and Oregon, including a route between Twin Falls, Idaho, and San Francisco, California, through Oakland, Sacramento and Roseville, California. O.N.C. operated also in Oregon and California with the principal route between San Francisco and Medford, Oregon, through Sacramento and Weed, California.

By voluntary agreement of Consolidated and O.N.C., joint through service, for a number of years, was provided by these two carriers between San Francisco and Portland by means of interchange of freight. Some years ago friction developed between the carriers owing largely to the attempt by Consolidated to have a traffic exchange agreement with its connecting carriers which would be known as "Freightways" by all carriers using the service. O.N.C. refused to join. The arrangement has "recently been dissolved as a result of an action brought * * * under the Anti-Trust Act" according to a statement of counsel in argument. (Record of argument before this court, p. 24.) Thereafter, Consolidated, apparently piqued by the failure of this scheme, filed applications for a through service from Portland to San Francisco. The first application was filed in January, 1940, and the second in May of the same year. Then O.N.C., apparently somewhat unwillingly, itself petition for a through service route of its own in January 1940. There were hearings held upon each, the application for Consolidated before joint Board No. 5,[4] and the application of O.N.C. before joint Board No. 11, commencing on July 8, 1940. For convenience of witnesses, the hearings were conducted at the same places and testimony was taken in one proceeding and followed by testimony taken in the other proceeding. A great deal of testimony was stipulated from one record into the other. However, the two proceedings were never consolidated and remained separate and distinct. The parties to these separate records were not identical.

The record in each of the hearings was closed on October 29, 1940. Neither of the joint Boards, No. 5 nor No. 11, could agree upon the conclusions or recommendations. Therefore, the matter was placed in the hands of an examiner of the Commission who recommended, thereafter, that neither application be allowed. Exceptions were filed by the respective parties. Over two years after the hearings closed, on March 1, 1943, by a report of Division No. 5, consisting of Commissioners Mahaffie, Rogers and Patterson, it was held, Commissioner Rogers dissenting, that both applications should be granted. Plaintiffs filed with the Commission a petition for reconsideration and rehearing upon the ground that new evidence showed a substantial change in transportation conditions since the closing of the record including matters resulting from the war emergency and petitioned that the certificates granted be held in abeyance pending rehearing, or in the alternative, that the report of Division 5 be reconsidered and reversed, and the several applications be denied.

On August 2, 1943, this petition was denied, and in September, 1943, certificates of necessity and convenience issued respectively to Consolidated and O.N.C. The complaint in this action, to set aside or annul the order, was filed January 13, 1944, hearing was had April 28, 1944, and the record and final briefs were on file June 9, 1944. Thus the matter is now presented upon applications made over four years ago.

This opinion and report of Division No. 5 of the Commission uses language which would indicate that the Commission considered these separate records as though the case were a consolidated one. No differentiation is made in the language of the findings as to whether the supporting evidence is drawn from one record or the other, and in some instances evidence which appeared only in one record is used to support a general finding as to Consolidated and O. N. C. also. This was made the point of attack by the plaintiffs who contend that they had no notice of this species of approach to the problem.[5]

---

1 Hereinafter referred to as Consolidated.

2 Hereinafter referred to as O.N.C.

3 Under provisions of § 207(a) of the Transportation Act, 49 U.S.C.A. § 307(a).

4 These joint Boards are authorized by 49 U.S.C.A. § 305.

5 Reliance is placed on the following cases among others. Interstate Commerce

At the outset it should be noted that Division 5, one Commissoner dissenting, arrived at an unexpected, if not startling, result when both applications for through-line operations were granted. Especially was this true after neither joint Board No. 5, nor joint Board No. 11, were able to arrive at an agreement, and an experienced examiner had recommended rejection of both applications. But the vice of the position is that the whole basis of the proceedings was the question of whether any through-line operation should be allowed and if so, which one of these two applications. The record was not made upon the basis that two through-line operations might be allowed. Indeed there is no suggestion that such a result was possible until the denouement when the report of Division 5 was announced. .

If we visualize the situation, the solution seems more perplexing. At ·the outset, Consolidated was operating by the valley route to and from Portland and Medford, on one branch, and Klamath Falls on the other. O.N.C. was operating on the valley route from and to Medford, Klamath Falls and San Francisco. At the most, the facilities were present for one through-line operation from Portland to San Francisco. At the stroke of a wand, this is metamorphized into the facilities for two through-line operations. Consolidated will have to furnish the additional equipment, the additional facilities, and the additional personnel to load, unload, operate and obtain business to and from Klamath Falls and Medford, on the one hand, and to San Francisco on the other. O.N.C. will have to furnish the additional equipment, the additional facilities, and the additional personnel to load, unload, operate and obtain business to and from Klamath Falls and Medford on the one hand and Portland on the other. The magnitude of the change is not lessened when we consider the number of intermediate points on each extension which must be served by this new dual operation. Furthermore, being thus competitors throughout the entire route, the carriers can no longer cooperate. From a unified cooperative system, two distinct operations in unlimited competition are created.

But it is said that the Commission has the power, in the public interest, to allow both operations. There can be no doubt of this position. Further, if the Commission had considered the question and found the facts, the court should not interfere. The Commission contented themselves with a formal finding as to each applicant that "the public convenience and necessity require operation by the applicant" over the route and between the points indicated. There is doubt that this is a sufficient jurisdictional finding as to the complicated set of facts involved here in turning a cooperative system into two competing through-route operations. The Division did not find anything as to the possibility of each of the applicants furnishing facilities, equipment and personnel to compete with each other over the length of this through-route. The findings as to O.N.C. might establish fitness to maintain a single line operation, but there are no corresponding findings as to Consolidated. Specifically, there are no findings as to the effect of competition in this dual line of operation. The Division did not consider the war-time economies in setting up such separate operations, nor did they make any findings thereon. The record, whether considered as several or joint, lays no basis for such findings.

The Division did not consider, nor did they find whether the shippers, many of whom testified for the carrier with which they did business, would have taken the same stand had they known that they were to deal with competing carriers. Perhaps plaintiffs could have marshaled numerous other witnesses if the solution at which the Division finally arrived could have been foreshadowed.

Not only did the Division fail to find affirmatively upon the vital matter of interest and convenience of the public, but the entire approach to the problem was as though the controversy were ruled entirely by the private interests represented in the record. The predominating color imparted to the report by this attitude may be envisioned by a close view of the following matters: First, it is said the genesis of the difficulties lies in the attempt of Consolidated to force O.N.C. to join "Freightways". The majority of Division 5 seems to have feared that the two carriers might

Commission v. Louisville & Nashville R. Co., 227 U.S. 88, 91, 93, 33 S.Ct. 185, 57 L.Ed. 431; Chicago Junction Case, 264 U.S. 258, 44 S.Ct. 317, 68 L.Ed. 667; United States v. Abilene & Southern R. Co., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016.

fail to cooperate in the future if the situation developed further along these lines. Then it is indicated that these two carriers handled the bulk of traffic on this route in the cooperative operation at the time of the hearings. Finally, it is said: "For reasons which are obvious, authority should be granted or denied to both applicants to operate over the valley route." Thus the Commission indicated that Consolidated and O.N.C. had proprietary rights in the use of this highway because of previous operations, and that such rights were paramount. As to the fact that O.N.C. has asked for a further hearing before the announcement of the report, the Division say: "but in view of our conclusions herein it is doubtful whether it [O.N.C.] would still desire such further hearing."

The record is replete with evidence of the fact that Consolidated attempted to bring pressure upon O.N.C. and the Commission, by refusing the cooperation required for efficient joint schedules under war conditions. The Commission apparently had no way of enforcing cooperation in the intricate exchanges of freight and functioning of related traffic routes. There is no doubt that O.N.C. was able to bear the weight of an independent through-route from Portland to San Francisco and return, serving intermediate points. The findings of fact of Division 5 do not show that Consolidated is able to establish and maintain such an operation. It is not in the public interest that anyone should have to be coaxed to play ball in the transportation industry.

■ The entire report is characterized by an approach to the problem as if the interests of Consolidated and O.N.C. were paramount. Further, the Division, without notice to the public and other interested parties, treated the record as though it were a consolidated case, and as though the problem litigated was whether two competitive through-routes could be authorized under existing conditions. As we have seen, the litigants did not treat the hearings as though this question was involved.

■ The brief of the Interstate Commerce Commission in this case criticizes the plaintiffs for conceiving that the function of the Commission is to protect the granted rights of operation as monopolies. Of course, nothing is better established than the principle that private rights in this

field must yield to the public interest. Indeed it is laid down that: "No certificate issued under this chapter shall confer any proprietary or property rights in the use of the public highways." [6]

■ This resume of the apparent public interest involved has been made before discussing the position of the plaintiffs. While it is true that problems such as these can only be brought to the courts when private interests conceive there has been injury of rights of property, and although the field of judicial review of administrative determination has been narrowly confined, the courts must in a litigated case, be the arbiters of the paramount public interest. Therefore, we now consider the conflicting claims.

The attack of the plaintiffs is based upon the following paragraph of the order of the Commission:

"In finally deciding the questions presented herein, applicants' cases rest on (1) their proposed speed-up of service, (2) their use of mechanically-refrigerated equipment, (3) their service to intermediate points, (4) their proposed single-line service as against joint-line service, and (5) in respect of Consolidated, its proposed through operations between San Francisco and points in eastern Oregon and Washington, between the Coos Bay area and San Francisco over the Coast Route, and to and from Lakeview."

■ It is said by plaintiffs that the Commission took evidence out of the case upon one application and gave consideration thereto in the case upon the opposite application. Examination of the joint report and the records shows that the evidence commented upon as relating to Consolidated can be from the record in that case. The same observation is pertinent with regard to O.N.C. and the record in that case. Some general matters are referred to which might be pertinent to both records, but these are matters of ordinary observation. The situation of each of the plaintiffs was carefully considered in relation to the particular records in which each was concerned. But nowhere was there consideration of the rights and duties of any plaintiff in relation to competition of two new through-haul lines to and from Portland and San Francisco. As to what effect the failure of the Commission in each proceeding, to consider the effect of

[6] 49 U.S.C.A. § 307(d); see also North Coast Transportation Co. v. United States, D.C., 54 F.Supp. 448.

granting the application in the other, had upon the ultimate conclusions arrived at in the consolidated proceeding, there is no means of judging. The approach was erroneous. Many instances can be quoted from the report to show that the finding, or conclusion, was based upon the records of the two proceedings without discrimination. Under these circumstances, no presumption should apply. Cf. United States v. Chemical Foundation, 272 U.S. 1, 14, 15, 47 S.Ct. 1, 71 L.Ed. 131. The fact that the Commission might make similar final orders upon consideration of the separate records, and in the light of the situation as affected by two new competitive routes, is beside the point. A fair trial is not accorded by the method of approach here used. Kline v. United States, D.C., 41 F. Supp. 577. No notice was given of the attempted conversion of an adversary proceeding by two applicants to establish a basis for one through line operation into a consolidated proceeding where both applications were granted. Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U.S. 88, 91, 93, 33 S.Ct. 185, 57 L.Ed. 431; Chicago Junction Case, 264 U.S. 258, 44 S.Ct. 317, 68 L.Ed. 667; United States v. Abilene & Southern R. Co., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016; Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; Ohio Bell Telephone Co. v. Public U. Comm., 301 U. S. 292, 57 S.Ct. 724, 81 L.Ed. 1093. When Division 5 accomplished the metamorphosis of the proceeding, the obligation to preserve the essentials of fair trial was violated because no opportunity was given plaintiffs to maintain their rights or present a defense to installations of which none had notice. See United States v. Baltimore & Ohio S. W. R. Co., 226 U.S. 14, 33 S.Ct. 5, 57 L.Ed. 104.

The plaintiffs object to the lack of jurisdictional findings. It has already been pointed out above that no such findings were made in relation to the necessity of establishing two new through operations in competition with each other and in competition with plaintiffs. The general conclusions of ability are supported by findings in the case of O.N.C., but are not at all supported by facts found relative to Consolidated. The vice of drawing conclusions from the two records results in a lack of jurisdictional findings on the essential factor that it was necessary and convenient in the public interest, and in the face of facilities furnished by plaintiffs, to initiate two new through-lines. Such a finding was an essential.

As far as the plaintiffs were concerned, the interests of each was given thorough consideration by the Division and the report contains complete findings as to the facilities and situation of each in respect to the conditions dealt with in the record. However, plaintiffs are not in any wise estopped from raising the matters upon which attack has been made as the questions are charged with the public interest.

The plaintiffs contend that the Commission should have granted a rehearing because of the age of the record, freezing statements of fact at a period of almost four years ago, and prior to the beginning of an emergency which may now be approaching an end, in a field where conditions have actually changed at unprecedented speed. Specific attention is directed to the basis of the order above quoted. It is true that the speedy schedules used by the Commission and cited by the order as one of the advantages of two through-lines, must be the subject of controversy. The question of whether the plaintiffs might not meet the schedules under other conditions is debatable. The presence or absence and use of mechanical refrigeration has no obvious relation to the war needs of the nation. The service to intermediate points is of course dependent upon the amount of equipment and personnel available. The disadvantage of joint-line service due to lack of cooperation may not be a factor under present circumstances, but might be considered in permitting one through-line service of either O.N.C. or Consolidated.

The denial of the rehearing, although by a full commission, was without opinion. The situation is entirely different from that reflected in Interstate Commerce Commission v. Jersey City, 64 S.Ct. 1129. The consideration and reconsideration by the Commission indicated by the opinion of the court in that cause, was notable. But nothing was there shown which reflects a condition comparable to four years of changed elements in motor transport on the Pacific slope under the strain of war emergencies in the Pacific and under stress of wartime needs and economies.

This court has not before it sufficient data to determine whether or not the changes which have occurred in this field do actually affect the public interest and convenience. Suffice it to say, that it is

apparent to all, these changes are kaleidoscopic and vital in nature. Before these changes have arrived at climaxes, and before the lines of force have been established, it is difficult to say how the Commission can now determine that it is in the public interest to establish such competing operations. By the time relative stability returns to this confused field, it may be that public interest will demand more or less competing lines on through-routes, and the situation may require that the certificates be granted to these or other operators.

Nevertheless, this is not an attempt by the court to find the facts, but simply an attempt to determine whether the Commission so found them. However, in a like situation the Supreme Court of the United States, in the public interest, set aside an order of the Commission because great changes had taken place in the field since the time of their findings. The Supreme Court has not said that Atchison, Topeka & Santa Fe R. Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273, would never be followed. The record in this case might require the application of that doctrine here. If the Commission had simply held renewed hearings and found upon the changed facts, and upon notice to the parties that the question of two new separate lines was to be considered, the court, as well as everyone, might well have been satisfied that they intended to find that the public interest as now established, demanded the changes. It must be remembered that this record was submitted in October, 1940, over three years ago, and it would seem to the court that it might be well for the Commission, at this time, to reconsider its order in the light of the facts as they now exist.

We do not know the answers to the factual questions thus posed, nor are we competent to answer them. It is apparent that in using the elements involved in an entirely new functional capacity, a different combination of delicate relationships would be involved, and the Division did not expressly find how such relationships would comport with the public interest. Because of this failure to give all parties a fair trial as to the authorization of two new through-lines in competition with each other, and the existing facilities, and because of their failure to make jurisdictional findings embodying such factors and specifically the ability of Consolidated to operate a through-line in competition with O. N. C., and other facilities, and finally because of their failure to consider the public interest as opposed to the interests of the favored carriers, the cause should be reconsidered by the Commission.

This court has power to suspend the order of the Commission [7] and to remand the matter to them for rehearing.[8] This action will be taken in order that all parties may be placed on notice as to what type hearing will be held, whether joint or several, and in order that appropriate findings be made as to the public convenience and necessity which requires the authorization of two new through-lines in competition with each other and in competition with the other facilities, and also as to the ability of Consolidated to initiate and maintain one of such lines in view of present conditions.

The order is suspended until the designated action may be taken by the Commission.

---

[7] 28 U.S.C.A. § 46.

[8] See United States v. Atlanta, Birmingham & Coast R. Co., 282 U.S. 522, 51 S. Ct. 237, 75 L.Ed. 513.