## Public Utility Commission v. Atlantic Freight Lines, Inc.

*Albert E. Luttrell* and *Lloyd S. Benjamin,* for Public Utility Commission.

*Edward Dumbauld, Herbert Baker, Stanley G. Stroup* and *Livengood & Nissley,* for defendant.

*Shertz, Barnes & Shertz* and *James H. Booser,* of *McNees, Wallace & Nurick,* amicus curiae.

SOHN, J., June 15, 1954.—We have before us preliminary objections filed March 6, 1953, by defendant, Atlantic Freight Lines, Inc., to an amended bill in equity filed February 16, 1953, by plaintiff, the Pennsylvania Public Utility Commission. Plaintiff seeks, by this proceeding brought pursuant to section 903 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1343, to enjoin certain transportation by defendant between the Philadelphia and Pittsburgh areas of Pennsylvania. Defendant holds no certificate from

the Pennsylvania Public Utility Commission. Certain intrastate carriers which do have certificates authorizing transportation between the Philadelphia and Pittsburgh areas of Pennsylvania, have filed briefs as amicus curiae.

This action was originally instituted by the Pennsylvania Public Utility Commission by a bill in equity filed December 17, 1951. The litigation has had various ramifications which are not presently material. On January 28, 1953, the original bill in equity came before this court on argument on preliminary objections involving 17 numbered paragraphs and numerous detailed exhibits. At the outset of that argument, in order to determine precisely which of the questions argued might require determination on the facts, President Judge Paul G. Smith, of this court, suggested that the Public Utility Commission should be permitted to amend to show the various routes involved. Accordingly, the Pennsylvania Public Utility Commission filed the present amended complaint in equity showing, where known, the routes followed by Atlantic Freight Lines in transporting the shipments complained about between the Philadelphia and Pittsburgh areas of Pennsylvania.

The amended complaint in equity sets forth in eight paragraphs the identity of the commission and of defendant, the entering of a cease and desist order by the commission against defendant on March 2, 1948, which was affirmed by the Superior Court and unsuccessfully challenged by defendant before the Supreme Courts of Pennsylvania and the United States, and the transportation thereafter in 1950 and 1951 by defendant of numerous shipments between the Philadelphia and Pittsburgh areas. The amended complaint specifies some 14 repeated instances of such transportation, on four occasions by the use of highways unknown (subparagraphs (h), (k), (l) and (n) of paragraph 7),

and on nine occasions (subparagraphs (a), (c), (d), (e), (f), (g), (i), (j) and (m) of paragraph 7) by the use of highways wholly within the Commonwealth of Pennsylvania, primarily the Pennsylvania Turnpike. On the other occasion (subparagraph (b)), the Pennsylvania Turnpike, United States Route 11 and United States Route 15 to its intersection with the Maryland State line is alleged to have been used in conjunction with unknown Maryland routes on a shipment transported from Jeannette, Pa., to Philadelphia, Pa., by defendant.

The complaint incorporates the March 2, 1948, report and cease and desist order of the commission and the July 27, 1948, opinion of the Superior Court, copies of which are attached as plaintiff's exhibits A and B. The complaint concludes with a prayer by plaintiff commission for enforcement of its cease and desist order of March 2, 1948, for injunctive relief against continued violation of the Public Utility Law, and for such further relief as shall seem meet and just.

The preliminary objections to the amended complaint filed by defendant consist of eight paragraphs and also incorporate by reference, in paragraph 1(e), some nine additional paragraphs, 6 to 14, inclusive, with attached exhibits from the prior preliminary objections to the original bill in equity. By these objections, they have: (1) Raised a question of jurisdiction over interstate transportation under rule 1017(b)(1); (2) moved to strike under rule 1017(b)(2) for nonconformity with rule 1019(a) in that the complaint has not specified whether the alleged violations were shipments between Pennsylvania points over defendant's authorized interstate routes or were wholly intrastate; (3) moved for a more specific pleading, in the same respect as to the routes traversed, under rule 1017(b)(3); (4) demurred—the substance of which defense is the interpretation of Atlantic's interstate

commerce certificate as defined by the Interstate Commerce Commission on December 20, 1949, under rule 1017(b) (4), and (5) to (8), raised the objection of laches and failure to exercise or exhaust a statutory remedy under Equity Rule 1509(b). The nine additional paragraphs and three exhibits incorporated by reference from prior preliminary objections purport to set forth the nature and scope of defendant's authorized interstate operating authority, defendant's exhibit C being identified as its Interstate Commerce Certificate; exhibit B as the 1949 interpretation thereof by the Interstate Commerce Commission, and exhibit A as defendant's petition therefor. We shall consider separately these various objections.

As to the question of jurisdiction, the amended complaint plainly avers intrastate transportation, concerning which this court has jurisdiction under section 903 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1343, to enforce the cease and desist order which was entered by the Pennsylvania Public Utility Commission and affirmed in Atlantic Freight Lines, Inc., v. Pennsylvania Public Utility Commission, 163 Pa. Superior Ct. 215, 218, where Judge Hirt stated with respect to this very defendant:

"It is conceded, as it must be, that the restraining order in this case is proper as applied to freight transportation between two points in Pennsylvania over highways wholly within the State."

The commission also has jurisdiction over transportation between Pennsylvania points of origin and destination, even where the carrier involved is also engaged in interstate commerce: Nevin Bus Lines, Inc., v. Public Service Commission, 99 Pa. Superior Ct. 370; Hubert et al. v. Public Service Commission, 118 Pa. Superior Ct. 128, 131, 132.

Defendant concedes that shipments from points in Pennsylvania to points in Pennsylvania by a route of

movement over the Pennsylvania Turnpike and other highways wholly within the Commonwealth, and at no time over the highways of another State, constitute intrastate commerce and are within the jurisdiction of the courts of Pennsylvania.

The amended complaint repeatedly avers such kind of transportation "wholly within the Commonwealth of Pennsylvania" between Pennsylvania points of origin and destination. For example, in paragraph 7(*a*) it is averred:

"(a) On or about March 20 and 21, 1950, Atlantic Freight Lines, Inc., did transport for compensation in a certain tractor and trailer 237 kegs steel wire nails from Donora, Pennsylvania, to Philadelphia, Pennsylvania, by use of the Pennsylvania Turnpike and other highways wholly within the Commonwealth of Pennsylvania."

Defendant contends that such allegations are ambiguous and that the shipments may have used other highways in addition. How this language is ambiguous and how it leads to such a conclusion is very hard to see. The plain language employed refutes such contention. In addition, where Maryland routes were used for a portion of the trip, in conjunction with the Pennsylvania Turnpike and other Pennsylvania highways, the complaint says so, as in paragraph 7(b). Where it is alleged, with respect to some nine shipments, that Atlantic used highways wholly within the Commonwealth of Pennsylvania in transporting between points of origin and destination in the Philadelphia and Pittsburgh areas, respectively, the amended complaint sets forth a cause of action with accuracy and precision and is sufficiently explicit to enable defendant to prepare a defense on the merits. The dates of transportation are given in these nine paragraphs, the points of origin and destination, and a description of the freight handled, and there can be no question but that defend-

ant from its own records can ascertain just what plaintiff had in mind when the amended complaint in equity was filed.

There were four shipments which were alleged to be transported between Pennsylvania points by the use of highways unknown to the commission. Here, again, the dates are given, the specific freight transported is described, the points of origin and destination are given, and defendant can ascertain with very little difficulty to itself whether or not it transported freight on those dates between the places enumerated. In our own court in the case of Columbia Pictures Corp. v. Nelley et al., 49 Dauph. 342, 344 it was held:

". . . particularity of statement is not required with respect to facts which are more likely to be known by the defendant, or which he could obtain as easily as the plaintiff."

Defendant simply asserts that it must be informed as to the routes followed in order to prepare its defense. *It* is more likely to know the routes followed by its trucks, and can obtain the facts more easily than the commission. We feel that as a matter of justice and common sense defendant should make answer and that the averments in subparagraphs (h), (k), (l) and (n) of paragraph 7 are sufficient to inform defendant and to put him upon his defense. Subparagraphs (a), (c), (d), (e), (f), (g), (i), (j) and (m) of paragraph 7 plainly aver *intrastate* transportation. As to these matters, preliminary objections 1, 2, 3 and 4 must be overruled. As the matter now stands, the averments of the amended complaint must be taken as true: Western Pennsylvania Hospital et al. v. Lichliter et al., 340 Pa. 382, 385. Such transportation between Pennsylvania points of origin and destination over Pennsylvania highways alone constitutes intrastate commerce.

We will next consider the question whether the commission has jurisdiction to prevent uncertificated common carrier transportation between Pennsylvania points of origin and destination where the normal, direct route between such points is over Pennsylvania highways and the carrier deviates into Maryland over a route for which it has not been certificated by the Interstate Commerce Commission. This question again seems to be included in preliminary objections 1, 2, 3 and 4.

There are certain basic principles regarding a State's right to regulate intrastate commerce which are fundamental. The first of these is that a State may require an intrastate certificate of an interstate carrier which is doing intrastate business. That principle is found in Eichholz v. Public Service Commission of Missouri et al., 306 U. S. 268, 273, 83 L. Ed. 641, 59 S. Ct. 532, rehearing denied in 306 U. S. 662, 669, 83 L. Ed. 1063, where the court said:

"Appellant did not seek from the state commission a certificate entitling him to do an intrastate business. Under the Commission's rule, he had his choice either to refrain from carrying property between points in Missouri or to secure a certificate of public convenience and necessity as an intrastate carrier. The validity of the requirement of such a certificate to promote the proper and safe use of the state highways is not open to question. *Hendrick v. Maryland*, 235 U. S. 610, 622; *Morris v. Duby*, 274 U. S. 135, 143; *Clark v. Poor*, 274 U. S. 554, 556, 557; *South Carolina Highway Dept. v. Barnwell Brothers*, 303 U. S. 177, 189; compare *Buck v. Kuykendall*, 267 U. S. 307, 315; *Interstate Busses Corp. v. Holyoke Ry. Co.*, 273 U. S. 45, 51; *Sprout v. South Bend*, 277 U. S. 163, 169."

Both the Superior Court of Pennsylvania and the Supreme Court of the United States have held that the

mere routing of shipments between two points in one State by way of another State does not take away a State's rights to protect its intrastate interests: Eichholz v. Public Service Commission of Missouri, supra; Ryan et al. v. Pennsylvania Public Utility Commission, 143 Pa. Superior Ct. 517, 17 A. 2d 637.

A further principle is properly established that the State may exercise jurisdiction over transportation which has its point of origin and destination both in the same State and which crosses a State line purely as a subterfuge to avoid State jurisdiction. Federal jurisdiction over interstate commerce relates to bona fide interstate commerce. In Ryan et al. v. Pennsylvania Public Utility Commission, supra, where the direct, normal route between Pittsburgh and Washington, Pa., or Uniontown, Pa., was over highways wholly within Pennsylvania, Route 51 or U. S. Route 19, Keystone Transfer transported shipments between those points by a longer route through Wheeling, W. Va., at a lower interstate rate. The commission entered a cease and desist order, the Superior Court affirmed, and reviewed a number of factors which might be properly considered in passing upon the question whether appellant, in crossing the State line, was doing so in good faith or for the purpose of attempting to avoid regulation by the State commission. An allocatur was refused by the Supreme Court of Pennsylvania and certiorari was denied, 314 U. S. 640, 62 S. Ct. 80, by the Supreme Court of the United States, which has since, in Central Greyhound Lines, Inc., v. Mealey et al., 334 U. S. 653, 660, 68 S. Ct. 1260, 1264, cited with approval this decision of the Superior Court in the Ryan case.

The business of transporting freight between points in the same State by routes partly in a second State is essentially local in character, despite the interstate movement. The parties to the transportation contract,

the making of the contract, and the services which were the subject of the contract, are preëminently within that State. The whole purpose of the transaction is to transport freight to a point within another State as the point of origin. Passage through another State is a mere geographic incident in the consummation of this local transaction: Swift & Co. v. U. S., 196 U. S. 375, 398. It is too late at this time to deny that whether a shipment moves in intrastate or interstate commerce depends upon the essential "character of the movement"; Western Oil Refining Co. v. Lipscomb, 244 U. S. 346; Baltimore & O. S. W. R. Co. v. Settle et al., 260 U. S. 166, 170, 43 S. Ct. 28, 30; Commonwealth v. Hill, 166 Pa. Superior Ct. 388, 392.

In considering the bona fides of the transaction averred in paragraph 7(b) of the amended complaint, it is averred that on July 24 and 25, 1950, Atlantic transported 1,049 glass lamp reflectors from Jeannette, Pa., to Philadelphia, Pa., by a combination of highways located within the Commonwealth of Pennsylvania and within the State of Maryland. Defendant's tractor-trailer unit operated eastwardly from Jeannette over the Pennsylvania Turnpike to Carlisle and United States Route 11 to Harrisburg, then proceeded southwestwardly on United States Route 15 to Gettysburg to the Maryland State Line, covered thereafter unknown highways in Maryland, and eventually arrived at its Philadelphia destination. This certainly cannot be bona fide interstate commerce. Nor does it follow the certificated route assigned defendant by the Interstate Commerce Commission. That it is not bona fide interstate commerce follows from the decision in Atlantic Freight Lines, Inc., v. Pennsylvania Public Utility Commission, supra. There Judge Hirt stated at page 217:

"On testimony which is not disputed, the commission found that the truck load of sugar delivered to Mc-

Keesport was transported from Philadelphia 'over U. S. Highway 1 to Baltimore, Maryland, thence over U. S. Highway 40 through Maryland and Pennsylvania to Uniontown, Pennsylvania, thence over Pennsylvania Highway 51 to Pittsburgh, Pennsylvania, thence over Pennsylvania Highway 30 to McKeesport, the point of destination.' . . ."

And at page 223:

". . . The evidence here is entirely sufficient to support the conclusion of the commission that the movement of the shipment across the State line in this case was but a subterfuge to evade this State's requirements as to intrastate commerce. . . . The normal route between Philadelphia and the Pittsburgh area is intrastate and can be driven by truck in 10 hours. . . ."

It has never been held, and we believe never intended, that a mere fiction of interstate commerce may be so availed of by subterfuge to evade a State's power to enforce sound regulations of the use of its highways: Atlantic Freight Lines, Inc., v. Pennsylvania Public Utility Commission, supra; Ryan et al. v. Pennsylvania P. U. C., supra. In both of these cases, an allocatur was refused by the Supreme Court of Pennsylvania and certiorari was denied by the Supreme Court of the United States: Eichholz v. P. S. C., 306 U. S. 268, 274, 59 S. Ct. 532, 535; also see Central Greyhound Lines v. Mealey, 334 U. S. 653, 655-656, 660, 68 S. Ct. 1260, 1262, 1264.

We must agree that "transportation between two points in the same state *by a normal route* which is partly in another state is still interstate transportation": Nevin Bus Lines, Inc., v. Public Service Commission et al., 120 Pa. Superior Ct. 266, 272; Blackmore et al. v. Public Service Commission, 120 Pa. Superior Ct. 437, 445. (Italics supplied.) That principle was codified in section 203(a)(10) of the Federal Motor Carrier Act of August 9, 1935, 49 U. S. C.

§303 (*a*) (10), and as stated by Mr. Justice Frankfurter, in Central Greyhound Lines, Inc., v. Mealey et al., 334 U. S. 653, 661, 68 S. Ct. 1260, 1265, Congress "explicitly included commerce such as that" when it defined the term "interstate commerce" to mean "commerce between any place in a State and any place in another State or between places in the same State through another State. . . ." Commerce among the States is a practical conception, drawn from the normal course of business and does not cover a sham or subterfuge and it is necessarily that same bona fide commerce which is meant in covering interstate *commerce* "between places in the same state through another state." Such bona fide commerce, moreover, must be "*through* another state." As stated in Mahaffey v. Hudspeth, 128 F. 2d 940, 942 (C. C. A. 10 (1942)) :

"The primary meaning of the preposition 'through' is from end to end, or from side to side, or from one surface or limit to the other surface or limit."

If the crossing of a State line, in the course of transportation between two points in the same State, is a subterfuge, the existence of State jurisdiction is distinctly recognized in Central Greyhound Lines v. Mealey, supra, where the routes between certain cities in upstate New York and New York City cut across sections of New Jersey and Pennsylvania and were the most direct ones possible, Mr. Justice Frankfurter, citing with approval both the Eichholz and the Ryan cases, supra, took pains to point out, at page 660, that "we are not dealing with a necessary deviation or a calculated detour."

The Federal Motor Carrier Act of August 9, 1935, has not precluded State jurisdiction in this case, but rather expresses a general policy of noninterference with regulation by the States. Our Public Utility Law of May 28, 1937, P. L. 1053, covers, as permitted by Congress, such transportation between points within

this Commonwealth. As held in Atlantic Freight Lines, Inc., v. Pennsylvania P. U. C., supra, page 222:

"Accordingly our Public Utility Commission had jurisdiction also to determine whether the carriage of sugar across the State line in this case was a mere subterfuge to evade the regulatory authority of this State."

This language was used in the light of the provisions of the Federal Motor Carrier Act.

Defendant in this case seems to base its entire position upon its Interstate Commerce Commission certificate. In view of the matters pleaded in the complaint, we fail to see where that ICC certificate has anything to do with the matters in question. In discussing paragraph 7(b), where the Jeannette-Philadelphia shipment was of more than 1,000 glass lamp reflectors, which were moved east over the Pennsylvania Turnpike, on United States Route 11, and then cut southwest over Pennsylvania on United States Route 15 to the Maryland line, and eventually reached Pennsylvania again after further maneuvers over unknown Maryland highways, defendant says:

"The plaintiff, therefore, specifically states that the shipment was from Jeannette, Pennsylvania, by way of Pennsylvania highways and Maryland highways to Philadelphia, Pennsylvania, which shipment, therefore, is entirely in conformity with the defendant's ICC certificate."

An examination of that certificate shows that Atlantic had no authority whatsoever with respect to a shipment originating in Jeannette, Pa., and destined to Philadelphia, Pa., by way of the Pennsylvania Turnpike or United States Route 15. The route designated by the Interstate Commerce Commission was not followed at all so far as the transaction in the State of Pennsylvania took place. Defendant did not go from Jeannette over its one and only possible "grandfather"

route over Pennsylvania Route 51 to Uniontown, then United States Route 40 through Cumberland, Hagerstown, Frederick and Baltimore, and United States Route 1 to Philadelphia. However, defendant does admit in its original brief that paragraph 7(b) does provide this court with the additional information requested and is sufficiently explicit.

Turning now to another phase of the question raised by the preliminary objections filed by defendant, we believe that the decision of the Superior Court of Pennsylvania in 163 Pa. Superior Ct. 216, 60 A. 2d 589, is res adjudicata in this proceeding. Atlantic's one and only basic objection to this bill is that the Interstate Commerce Commission did on December 20, 1949, find that Atlantic was authorized to transport commodities described in its certificate, in interstate commerce between Philadelphia, Pa., and Pittsburgh, Pa., and points within 20 miles thereof, over the route authorized by way of Baltimore, Md. Defendant contends that this finding of the Interstate Commerce Commission has rendered both the commission's order of March 2, 1948, and the July 27, 1948, opinion of the Pennsylvania Superior Court, 163 Pa. Superior Ct. 216, 60 A. 2d 589, which is exhibit B in the bill of complaint, "functus officio" and of no effect in this proceeding. We do not so understand the law.

Judge Dithrich in Highway Express Lines, Inc., v. Pennsylvania P. U. C., 164 Pa. Superior Ct. 145, 149, says:

"While the precise question whether a carrier may follow a shipper to a new location has not heretofore been raised in the appellate courts of this State, or in any reported case before the Public Utility Commission, the question has been before the Interstate Commerce Commission so frequently that a general principle in respect thereof has been evolved; *and while the decisions of the Interstate Commerce Commission are*

*not binding on us they are highly persuasive.*" (Italics supplied.)

The Federal District Court for the Eastern District of Oklahoma in Interstate Commerce Commission v. A. W. Stickle & Co., 41 F. Supp. 268, 271-72 said:

"Use may also be made of decisions of the Interstate Commerce Commission as applied to analogous factual situations. *These decisions, while not binding on the court, in the absence of decisions by the courts are persuasive and entitled to great weight.*" (Italics supplied.)

The above cited cases are authority for the proposition that the court *might* make use of Interstate Commerce Commission decisions, but that the court is *not bound to make use* of such decisions. The Federal case cited goes further and says *"in the absence of court decisions."* (Italics supplied.)

The case at issue is even stronger than the above cited cases. At the time of Judge Hirt's decision (July 27, 1948), defendant had not filed its petition for a declaratory order with the Interstate Commerce Commission and did not do so until September 4, 1948. Thus at the time of Judge Hirt's opinion there was not in existence any expression of opinion by the Interstate Commerce Commission that Judge Hirt *might have used* but was *not bound to use.* Atlantic did not turn to agency action until after adverse court decisions ranging from the Pennsylvania Superior Court to the Supreme Court of the United States. This agency action cannot be permitted to supersede judicial action which was not bound to follow or accede to the agency action even had it been in existence at the time of the court decision.

Defendant had every opportunity to secure an interpretation of its ICC certificate by the Interstate Commerce Commission between October 28, 1946, the date the complaint versus defendant was instituted by the

Public Utility Commission, and April 20, 1948, the date of argument before the Superior Court of Pennsylvania. See Atlantic Freight Lines, Inc., v. Pennsylvania P. U. C., supra. It failed to do so until after an adverse court decision and is clearly guilty of laches.

"The thing presented for adjudication in the case in the state court was the validity of the order, and it was incumbent on the appellant to present in support of his asserted right of attack every available ground of which he had knowledge. He was not at liberty to prosecute that right *by piecemeal,* . . .

". . . A judgment upon the merits in one suit is *res judicata* in another where the parties and subject matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end": Grubb v. Public Utilities Commission of Ohio et al., 281 U. S. 470, 478, 479. (Italics supplied.)

So the decision of the Superior Court of Pennsylvania is clearly res adjudicata in this proceeding. In Grubb v. Public Utilities Commission of Ohio, supra, it was held that a judgment of a State court affirming an order of a State commission over an objection distinctly raised under the Constitution is necessarily an adjudication of the Federal question, although that question be not mentioned by the court in its opinion.

"The jurisdiction of the Superior Court of Pennsylvania in considering and reviewing the action of the Public Service Commission is judicial. Thus, having passed by the ending of the administrative proceedings, and having thereafter entered a state judicial tribunal, the complainants must abide the consequences . . .": Blackmore et al. v. Public Service Commission of Pennsylvania et al., 12 F. Supp. 751.

"The four identities which must be present to support a plea of res adjudicata are (1) the thing sued

for, (2) the cause of action, (3) the persons and parties to the action and (4) the quality in the persons for or against whom the claim is made": Jones v. Costlow et al., 354 Pa. 245, 252.

In Federal Water & Gas Corp. et al., 188 F. 2d 100, the court at page 104 stated as follows:

"When an administrative agency exercises power of a quasi-judicial or adjudicatory nature and its order has been affirmed by the final judgment of a reviewing court, the rights and liabilities necessarily determined by the judgment of affirmance become res adjudicata."

This case goes even further for it holds, at page 105, that:

". . . A judgment of a court of competent jurisdiction, once final, is binding under the rules of res judicata even though it was based upon a patently erroneous view of the law."

Here defendant initially selected the State courts of Pennsylvania to attack the March 2, 1948, order of the Pennsylvania Public Utility Commission and lost every decision, including the final one by the United States Supreme Court. It seems rather strange to say that defendant can now be permitted to say that those decisions of the appellate courts of Pennsylvania and the United States Supreme Court have been rendered "functus officio" by the December 20, 1949, finding of the Interstate Commerce Commission. Even if this so-called "decision" of the Interstate Commerce Commission would be controlling, it would not apply to most of the shipments complained of by this commission, inasmuch as many of those shipments, as shown by the amended complaint, were not made by way of Baltimore, Md., but by routes wholly within Pennsylvania.

Defendant, as we have said before, places great reliance upon the 1949 Interstate Commerce Commission interpretation of its certificated Newark, Philadelphia,

Baltimore, Pittsburgh "grandfather" route. That exhibit B, attached. to its original preliminary objection and incorporated by reference in paragraph (1) (e) of the present preliminary objections, indicates that on May 20, 1949, the Interstate Commerce Commission interpreted defendant's "grandfather" route via Baltimore between New York and Pittsburgh, naming Philadelphia as an intermediate point. We fail to see how that interpretation is before us at this time on preliminary objections. As defendant concedes in its brief:

"The plaintiff has not admitted the averments set forth in the preliminary objections."

Moreover, this 1949 interpretation was never embodied in any order subject to judicial review. Defendant had asked for the interpretation under the Administrative Procedure Act, but the Interstate Commerce Commission held that that act did, not apply. Even though this 1949 interpretation by the Interstate Commerce Commission was pertinent to the issue raised here, it is not apparent that any of the shipments set forth in the amended complaint moved over defendant's Newark, Philadelphia, Baltimore, Pittsburgh route. All the Interstate Commerce Commission did on December 20, 1949, is embodied in its conclusion, as follows:

"We conclude, and so find, that under certificate No. MC-77477 petitioner is authorized to transport the commodities described therein, in interstate or foreign commerce, between Philadelphia, Pa., on the one hand, and Pittsburgh, Pa., and points within 20 miles thereof, on the other, over the route authorized therein via Baltimore, Md."

That route via Baltimore, Md., is from Uniontown, Pa., which followed United States Highway 40, as is described in Atlantic Freight Lines v. Pennsylvania Public Utility Commission, supra. The amended com-

plaint discloses no shipments that moved over Atlantic's route via Baltimore, Md. As a result, this defense or objection is eliminated by the amendment, if indeed it was ever properly in the case. Defendant frankly states in its brief, "the crux of that defense is the interpretation of Atlantic's interstate commerce certificate decided by the Interstate Commerce Commission on December 20, 1949. . . ." It follows, therefore, that no basis remains for defendant's demurrer under rule 1017(b) (4) and that its preliminary objection no. 4 should for this additional reason be overruled.

We are unable to see, moreover, how the Pennsylvania Public Utility Commission could have sought a judicial review of the December 20, 1949, decision of the Interstate Commerce Commission, as contended by defendant. We have reviewed this matter, as well as the pertinent sections of the United States Code relative to judicial review of Interstate Commerce Commission decisions. This pronouncement or interpretation or decision, if it can be called that, was definitely not an "order", but what can be best described as a mere "finding". The concluding paragraph of the report of the commission (ICC) we have already quoted verbatim in our opinion.

The United States Code, governing review of ICC orders (28 U. S. C. §§2321-2325) with relation to judicial review of ICC orders provides:

"§2321. Procedure generally; process

"The procedure in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part *any order* of the Interstate Commerce Commission other than for the payment of money or the collection of fines, penalties and forfeitures, shall be as provided in this chapter . . ."

"§2324. Stay of Commission's order

"The pendency of an action to enjoin, set aside, annul, or suspend *any order* of the Interstate Com-

merce Commission shall not of itself stay or suspend the operation of the order, but the court may restrain or suspend, in whole or in part, the operation of the order pending the final hearing and determination of the action . . ."

"§2325. Injunction; three-judge court required

"An interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of *any order* of the Interstate Commerce Commission shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title . . ." (Italics supplied.)

In United States et al. v. Atlanta, Birmingham & Coast Railroad Company, 282 U. S. 522, 528, where reports of the Interstate Commerce Commission are under discussion we find the following:

"No case has been found in which matter embodied in a *report* and not followed by a *formal order* has been held to be subject to judicial review." (Italics supplied.)

See also Diamond Tank Transport, Inc., et al. v. United States, 23 F. Supp. 499. Again in Shannahan et al., Trustees, v. United States et al., 303 U. S. 596, 599, Mr. Justice Brandeis says:

"The function of the Commission is limited to the determination of a fact. Its decision is not even in form an order. It 'had no characteristic of an order, affirmative or negative.' [citing cases] . . . The decision neither commands nor directs anything to be done. 'It was merely preparation for possible action in some proceeding which may be instituted in the future.' "

No evidence was presented before the commission upon which the report was based, but simply an interpretation was made of the certificate granted them on October 8, 1948. The commission says, page 187:

"It was our intent to, and we in fact did, authorize by the certificate in issue the transportation by petitioner of interstate shipments over the route via Baltimore not only between the termini of Pittsburgh and Newark, but also between either of such termini and the designated intermediate and off-route points, as well as between the intermediate and off-route points themselves."

This was but a clarification of its former certificate, but not a formal order from which an appeal could have been taken to the United States district court. But as we have already said, we do not see how it is the basis for any preliminary objections.

The other remaining preliminary objections, authorized by rule 1509(b), set up the defense of laches and failure to exhaust statutory remedies. As to the question of laches, the preliminary objection (5) asserts:

"The bill should be dismissed in accordance with Equity Rule 1509(b) by reason of plaintiff's laches in failing to take any action after the Interstate Commerce Commission's decision of December 20, 1949, until the original bill in the instant case was filed on or about December 19, 1951."

This shows that the asserted delay was for less than two years.

"If it appears that suit was instituted before the statutory period had elapsed, the simple fact that the complainant delayed the assertion of his claim is not ground for denying relief." See 19 Am. Jur., Equity, §501.

Furthermore, only gross laches can be set up by way of demurrer or preliminary objection, because, as is set forth in Black v. Woodward et al., 24 Dauph. 366, 370:

" 'The question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action ac-

crued, but whether, under the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute or prosecute his proceeding.' *Townsend vs. Vanderwerker*, 160 U. S. 262."

Again, it is further held in Breisch et al. v. Locust Mountain Coal Co. et al., 267 Pa. 546, 552:

"While laches may be imputed to the Commonwealth, or its representatives, *it is done only in rare cases, . . .*" (Italics supplied.)

An examination of the complaint will show that it describes continuing violations of a statute of this Commonwealth and the agency charged with enforcement thereof has been engaged in prolonged litigation since 1948 in an effort to stop such violations. Under these circumstances, we fail to see any merit in defendant's contention that the Pennsylvania Public Utility Commission should have instituted this particular proceeding a bit sooner. Preliminary objection 5 must be overruled.

With respect to exhausting statutory remedies, which question seems to be raised by rule 1509(*d*), defendant states in its brief that:

"There are statutory remedies available to the plaintiff which plaintiff has made no effort whatsoever to utilize."

But just a little later in the same brief, we find:

"It is conceded by the defendant that shipments from point to point in Pennsylvania wholly *intrastate* are in violation of the Public Utility Code and that a multiplicity of such violations would warrant the plaintiff in seeking the jurisdiction of this Honorable Court."

Again we say that with respect to all of the alleged violations except four, they are described as being wholly intrastate and one of them concerns a route which is partly in Pennsylvania and partly in Mary-

land but not over defendant's certificated route as described by the Interstate Commerce Commission. A series of prosecutions brought by the Public Utility Commission would avail very little. The commission must resort to equity and have all of the matters determined at one time. In Cavanaugh et al. v. Pennsylvania Liquor Control Board, 60 Dauph. 171, 176, it is held:

". . . to oust equitable jurisdiction, the remedy at law must be full, adequate, complete and reasonably convenient. . . ."

Defendant seems to lose track of the fact that by section 903 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1343, the commission, as an agent of this Commonwealth, is authorized to institute in this court injunction proceedings to restrain violations of the Public Utility Law, or of orders of the Public Utility Commission. As held in Pennsylvania Public Utility Commission v. Israel et al., 356 Pa. 400, 405, 409, 412, 414, this statutory provision is valid and decisive. Preliminary objections nos. 6, 7 and 8 must also be overruled.

We conclude, therefore, that all of the preliminary objections must be overruled for the reasons hereinbefore set forth. By matter of summary, there is authority by virtue of section 903 of the Public Utility Law of May 28, 1937, P. L. 1053, authorizing plaintiff to institute injunction proceedings in the Court of Common Pleas of Dauphin County to restrain violations of its orders; said court has jurisdiction over all of the issues raised in this proceeding, including matters affecting interstate commerce; the routing of shipments between two points in one State by way of another State does not necessarily make those shipments bona fide interstate commerce; the decision of the Superior Court of Pennsylvania to 163 Pa. Superior Ct. 216 is res adjudicata in this proceeding; the

interpretation of the Interstate Commerce Commission of December 20, 1949, cannot affect this proceeding at this time on preliminary objections; plaintiff could not seek a judicial review of such a report because it is not an appealable final order, and the amended bill of complaint sufficiently sets forth and advises defendant with respect to those matters which it is called upon to answer. We accordingly make the following

## Decree

And now, June 15, 1954, the answer raising preliminary objections to the amended bill is dismissed. Defendant is required to file an answer to the amended bill within 30 days under penalty of having the bill taken pro confesso. The prothonotary is directed to notify the parties or their counsel of this decree forthwith.